## Case No. 6,772.

### HOWE et al. v. SHEPPARD et al.

[2 Sumn. 133.] 1

Circuit Court, D. Maine. May Term, 1835.

INSOLVENTS — DEBTS DUE THE UNITED STATES — STATUTE OF 1797, c. 74—PLEADING.

1. The statute of 1797, c. 74 [1 Story's Laws, 465; 1 Stat. 515, c. 20], giving a priority to debts of the United States in cases of insolvency, applies to equitable as well as legal debts.

[Cited in Re Rosey, Case No. 12,066.]

2. But the United States cannot enforce such priority in a suit at law, as assignee of a judgment of a private creditor of the insolvent debtor, where the suit is brought in the name of the creditor, and not in the name of the United States.

[Cited in U. S. v. Lewis, Case No. 15,595.]

3. Quaere, whether the United States may not sue at law as assignee of a chose in action or debt, as such an assignment in case of the crown would, by the common law, vest a legal title.

This action was debt, brought on the 14th of December, A. D. 1830, by the United States, in the name of Howe & Howard, on a judgment recovered against Abiel Wood, at a court of common pleas, holden at Boston, in the commonwealth of Massachusetts, on the first Tuesday of January, A. D. 1821, for $4,663.31, the whole of which judgment was, on the 2d day of September, A. D. 1830, duly assigned to the United. States by Howe & Howard, in part satisfaction of several judgments recovered by the United States against Howe & Howard, on their duty bonds; and Howe & Howard were released from an equal amount of their debts due the United States. The writ was duly served on Wood, and all his real estate attached on the 23d of March, 1831, when he was duly notified of said assignment to the United States. The action was entered at the circuit court, holden at Portland in May, 1831, and has been continued from term to term, awaiting the action of congress on a petition there pending for the relief of said Wood. On the 26th day of October, A. D. 1834, the said Wood died, and on the 10th day of November, 1834, administration was duly granted to John H. Sheppard, who has represented said estate insolvent,—and said estate is absolutely insolvent. On the 10th day of December, 1834, said administrator was notified of the pendency of this suit of the United States, and that the United States claimed priority of payment of such judgment as should be rendered in this suit, out of the effects of said Wood—all which effects are still in the hands of the administrator. The question now submitted to the court, on an agreed statement of facts, the substance of which is given above, was, whether the United States were entitled to priority of payment out of the effects of the said Wood, in the hands of his said administrator?

1 [Reported by Charles Sumner, Esq.]

Mr. Anderson, Dist. Atty., for the United States, argued that, as the whole judgment against Wood was assigned to the United States for a full and valuable consideration, and notice of the assignment duly given to Wood, he became indebted to the United States to the amount due on said judgment. Welch v. Mandeville, 1 Wheat. [14 U. S.] 233; Mandeville v. Welch, 5 Wheat. [18 U. S.] 277; Steele v. Phoenix Ins. Co., 3 Bin. 312. If the debt ascertained by the judgment as due from Wood to Howe & Howard became by the assignment, a debt due to the United States, Wood became a debtor to the United States; and, by the 5th section of the act of 1797, the United States are entitled to priority of payment out of his effects, now in the hands of his administrator. In the case of U. S. v. Fisher, 2 Cranch [6 U. S.] 358, the court say: "On this subject it is to be remarked, that no lien attached by this law; no bona fide transfer of property, in the ordinary course of business, is overreached. It is only priority in payment, which, under different modifications, is a regulation in common use, and this priority is limited to a particular state of things, when the debtor is living, though it takes effect generally if he be dead." In this case, Blight was the indorser of a bill of exchange, which the United States had purchased in the market. If the United States claim priority out of the effects of an endorsee of a protested bill of exchange, which they purchase in the market, they surely may claim priority on an endorser or maker of a promissory note, purchased under like circumstances. The United States have as full and entire an interest in the debt due from Wood to Howe & Howard, by the assignment of the judgment, as they would have had, had Howe & Howard assigned the note on which the judgment is founded; and if the United States would have claimed priority as endorsees of the note, must they not hold it as assignees of the judgment on that note? Wood could not complain. He had as much election as to who should be his creditor in the one case as the other. His paper was liable to assignment,—the judgment on that paper is liable to no more. The action being in the name of the assignors, gives the defendant the benefit of all off-sets he had against the assignors before notice of the assignment, besides he has the benefit of all off-sets he may have against the assignee. Corser v. Craig [Case No. 3,255]. If the priority is not sustained because the action is not in the name of the United States, then a distinction must be made between the interest of the assignee of a judgment on a note of hand or bill of exchange, and that of the endorsee of the note or bill on which such judgment is rendered; for, whether the action is in the name of the United States, or in the name of their assignors, the interest of the United States is the same, and that interest is not effectually protected if

such distinction prevails. The United States prosecute all actions in the name of the postmaster general, for debts due them through the post office department. But the United States are no more party in interest in these actions than they are in this. If they may claim priority of payment out of the effects of an insolvent debtor to the post office department, on a judgment in the name of the postmaster general, may they not claim the same priority of payment of this judgment in which they have as entire an interest? In Hunter v. U. S., 5 Pet. [30 U. S.] 172, it is said: "If the right of the United States to priority of payment covers any part of the property of an insolvent, it must extend to the whole until the debt is paid." It must then extend to a debtor's debtor. Priority must cover enough of a debtor's effects, wherever situated, whether in his own hands or hands of his debtor, to satisfy the debt due the United States, or it cannot be said to extend to all the debtor's effects. The argument that the debtor, or other creditors of the debtor may suffer inconvenience, or perhaps damage, by such priority, where the United States becomes a creditor by assignment, cannot prevail against the "clear and unambiguous words of the law." And it is well known to all merchants, that the United States is at all times the largest creditor in the market, and most probably to be met by them in every distribution of an insolvent's effects,—and knowing from the beginning the rules governing the action of this creditor, they have no right to complain of his severity, provided it is uniformly exercised. If priority does not extend to a debtor's effects in the hands of his debtor, then it is limited to effects in possession, and does not extend to choses in action, which limitation is denied in the case of Hunter v. U. S. By the rigid rules of the ancient common law, no chose in action could be assigned, save by the king, but the necessities of commerce and the good sense of the times have, from time to time, removed the restrictions and limitations formerly put on the assignee, and he is now invested with all the rights, subject to offset against the assignor, that he would have if the action was in his own name. See Master v. Miller, 4 Term R. 341.

John H. Sheppard, pro se, contended that the question of priority must depend on the construction of the act of congress of March 3, 1797 (3 Laws U. S. [By Folwell]) 423 [1 Stat. 515], and particularly of the 5th section of this act, as follows: "And be it further enacted, that where any revenue officer or other person, hereafter becoming indebted to the United States by bond or otherwise, shall become insolvent, or where the estate of any deceased debtor, in the hands of executors or administrators, shall be insufficient to pay all the debts due from the deceased, the debt due to the United States

shall be first satisfied." The defendant is not a debtor to the United States, within the spirit and meaning of this act; nor did the deceased become indebted to the United States, by bond or otherwise in the above suit. (1) It does not appear of record that defendant is the debtor. The plaintiffs are private citizens. The United States are not named in the writ, nor in the judgment which must follow the writ. Nor can they be in the examination. If defendant is then a debtor to the United States, it must be by construction indirectly and not directly—by equity, not by law—and by an ex post facto transaction, and not by the original contract. And the plaintiffs are consequently to be ascertained not by record but by matter in pais. (2) There is no express promise to pay this debt to the United States, by the defendant. Nor could the law raise an implied one. If so, the United States might have brought the suit in their own name. Coolidge v. Ruggles, 15 Mass. 387; Skinner v. Somes, 14 Mass. 108; Doct. & Stud. c. 24, p. 181; Lawes, Pl. (Story's Ed.) 53. (3) It then becomes necessary to examine the legal effect of the assignment of a chose in action. It is an universal principle, recognized without exception in all the United States and state Reports, that an assignment of a chose in action with notice, gives the assignee an equitable interest, which the court will protect. Welch v. Mandeville, 1 Wheat. [14 U. S.] 233, and Dunn v. Snell, 15 Mass. 481. Is the defendant made by this assignment a debtor to the assignee? The decisions do not go to this extent. See Id.; Bebee v. Bank of New York, 1 Johns. 530, 552; 1 Madd. Ch. Prac. 547; 2 Bl. Comm. 442; 2 Com. Cont. 509; Shep. Touch. c. 12, p. 239; 5 Pick. 259, 266, 267; 2 Vern. 699, in note; 1 P. Wms. 782; 2 Strange, 899; 1 Dane, Abr. 289, c. 14, § 21. By the foregoing authorities, it appears that the assignee acquires no new rights—that he stands only in the place of the assignor—that there is no change of the process of the court—that he only appears as an attorney of the assignor, irrevocable, and not as a party, and that the debtor's liabilities and property are not altered nor more exposed, by an assignment of his creditor. The assignee has not even the legal, but only an equitable or beneficial interest. While his rights are protected in obtaining the fruits of his judgment, the debtor's funds or estate, are subjected to no diversion nor inconvenience, other than would have occurred if no assignment had ever been made. For if the defendant could be made the debtor of the assignee, this action is wrongly brought; the United States should have been plaintiffs of record. (4) The construction of the king's prerogative in England, favors the defendant's view of the case. 5 Bac. Abr. tit. "Prerogative," E, p. 554; Com. Dig. "Assignment," D; 5 Petersd. Abr. 283, "Chose in Action." The prerogative of the king is always exercised tenderly, it would seem. For

in 1 Madd. Ch. Prac. 619, it is said: "If there be a debt owing to the king, the court will direct the king's debt to be satisfied out of the real estate, that the other creditors may be let in to have a satisfaction out of the personal estate." "The little finger of the law," says Eunomus (Dialogue 1, vol. 1), "is heavier than the loins of the prerogative." The case of the U. S. v. Fisher, 2 Cranch [6 U. S.] 358, does not settle this question against the defendant. It was there decided that priority extends to all debtors of the United States, whether revenue officers, bondsmen or endorsers of bills of exchange. The defence was, that debtors for public dues, receiptors of public moneys, and accountable agents, were only intended to be included in this statute prerogative of our republic, as it may well be called. Chief Justice Marshall regarded the question as not without embarrassment. Washington, J., dissented from the opinion of the court who decided that all debtors to the United States were included. That case does not touch the present, as the suit there was in behalf of the United States; the record showed that defendant was plaintiff's debtor; the debt was originally contracted with the United States, and the pleadings showed the parties. The defendant in the present case never was a debtor to the United States. The record shows different parties—and an averment against a record is bad pleading. Co. Litt. 260a. Indeed, if the debt had been less than $500, it might have been questioned, if the United States would not have been compelled to come into our state courts for relief in this suit. As to Master v. Miller, 4 Term R. 341, Mr. Justice Buller's opinion was overruled by the rest of the court; at least they thought the form of the action was essential. Priority in a case like this would operate severely on honest creditors. It would open the door to fraud and collusion among collectors and debtors to the United States. The government, by a secret purchase, might slily and suddenly step in as an assignee, and sweep all a debtor's property beyond the reach of other creditors. A principle so harsh and severe, would be more dangerous, than the prerogative of the British king, which Lord Coke says, is not allowed by common law to be exercised to the injury of a subject.

Before STORY, Circuit Justice, and WARE, District Judge.

STORY, Circuit Justice. This case comes before the court upon an agreed statement of facts; and the object is to ascertain, whether, as the estate of Abiel Wood is insolvent, the United States have a right to priority of satisfaction out of his assets, for the judgment debt of the plaintiffs (Abraham F. Howe and another), which was obtained against Wood, and assigned by the plaintiffs to the United States, in the life-time of Wood. The question, intended to be raised, is not, whether in this form of action (a suit at law on the judgment, brought in the name of the judgment creditors for the benefit of the United States), the priority of the United States can be insisted on. If that were the point, we should have no hesitation in saying it could not; for nothing in the suit can judicially be taken notice of, which shall distinguish the case of the plaintiffs from that of other private judgment creditors, as to rights or remedies. But the real question is, whether in any form of suit, at law or in equity, the United States can, upon such a debt, so assigned to them, insist upon the statute priority.

I am by no means satisfied that this is not a case, where at law, the government might sue the debtor directly upon the assigned judgment in their own name. For at the common law, though choses in action are not assignable, yet in the case of the king, there is an exception; for upon an assignment of a chose in action to the king, he is allowed to sue the debtor in his own name. This is not so much a matter of prerogative, as an exception coeval with the rule, as to the non-assignability of choses in action. So the doctrine is laid down in Miles v. Williams, 1 P. Wms. 252, which cites 21 Hen. VII.; 19. Lord Chief Baron Comyns lays down the same doctrine in the clearest terms.[2] And I have a strong impression, that the same doctrine has been recognized, incidentally, by the supreme court of the United States.

But this point is not important to be determined in the present case; because it is clear, that the assignment of the judgment did in equity transfer the debt to the United States; and the government might, by a bill in equity, have enforced the judgment against the debtor. The question, then, comes to this, whether the statute of 1797, c. 74 [supra], giving priority to the government in the payment of debts, applies to legal debts only, or to debts both legal and equitable. The fifth section of that statute declares "that where any revenue officer or other person becoming indebted to the United States, by bond or otherwise, shall become insolvent, or where the estate of any deceased debtor, in the hands of executors or administrators, shall be insufficient to pay all the debts due from the deceased, the debt due to the United States shall be first satisfied," etc. Now, in this language, there is not the slightest distinction made between equitable and legal debts. If an equitable debt is due to the United States, is it to be wholly excluded from any payment out of the assets? If such debt is payable out of the assets, what is the order of payment? Is it to be postponed to other legal creditors; or paid pari passu with them? The statute is silent as to any marshalling of assets, except in cases of priority; and it

---

[2] See, also, Com. Dig. "Assignment," D.

gives that priority in all cases of debts. The words of the statute seem to extend to all cases of debts due to the United States from an insolvent debtor's estate; and if payable at all out of his assets, the rule of priority seems co-extensive with the duty of the executor or administrator to pay.

By laws of Maine (and Massachusetts has the same rule), there is no difference in the dignity of debts. All are equally payable out of the assets, pari passu. And in regard to private creditors, no distinction is taken between equitable and legal debts, any more than between legal and equitable assets. I know of no ground, upon which equitable debts are, or can be excluded from a proportionate dividend of the assets, when such debts are due to private creditors. How, then, can a different rule be applied to equitable debts due to the United States? In the sense of the laws of Maine, and in the sense of the laws of the United States, they are still debts. Suppose an estate solvent as to the payment of legal debts, but not as to the payment of equitable debts also, can it be treated as other than an insolvent estate? And, if insolvent, are not the United States necessarily entitled to a priority as to all their debts by the very terms of the statute?

After reflecting much upon the subject, I am unable to arrive at any other conclusion, than that the priority of the United States attaches to all debts, equitable, as well as legal. Upon any other construction, I cannot perceive, how they are entitled to any payment whatsoever, out of the assets for equitable debts. If they are not debts against the estate in cases of insolvency, neither can they be deemed such in cases of solvent estates, a conclusion which would overturn the best established principles. The district judge concurs in the opinions, which I have thus expressed. The case has been exceedingly well argued, and with great ingenuity. But, after all, it comes back to the simple question already stated. According to the agreement of the parties, the cause will stand continued, in order to enable the administrator to perfect his application for relief to congress.

