[No. 27161.    Department Two.    November 30, 1938.]

*In the Matter of the Estate of* THOMAS DICKSON, *an Incompetent Person.*

UNITED STATES OF AMERICA, *Appellant,* v. J. G. DICKSON, *as Guardian, et al., Respondents.*[1]

[1]Reported in 84 P. (2d) 661.

*J. Charles Dennis, G. D. Hile,* and *Oliver Malm,* for appellant.

*The Attorney General* and *John E. Belcher, Assistant,* for respondent state of Washington.

MILLARD, J.—On December 5, 1935, Thomas Dickson borrowed $1,006.64 from the Citizens Bank of Bremerton under the terms of the Federal housing administration act (12 U. S. C. A., § 1701 *et seq.*) and executed a note in favor of the bank for the amount of the loan, which was payable in forty-eight equal monthly installments, the first installment to be paid January 5, 1936. Under § 1703 of the housing act, the lending bank was insured against any loss sustained by it as a result of the loan to Dickson. Ten monthly installments, the last in October, 1936, and the interest due in November and December, 1936, on the loan were paid by Dickson.

On default of Dickson, the Federal housing administrator paid, pursuant to § 1703, *supra,* to the lending bank by draft on the Treasury of the United States on January 28, 1937, the unpaid balance due on the note. Thereupon, and prior to adjudication of insolvency of Dickson, the bank assigned the note "to the Federal housing administrator, acting on behalf of the United States of America."

On January 25, 1937, following his application under date of January 7, 1937, for appointment, J. G. Dickson was appointed guardian of the estate of Thomas Dickson, who was adjudged incompetent by reason of insanity.

Acting on behalf of the United States, Federal Housing Administrator McDonald duly filed a claim upon the guardian of the estate of Thomas Dickson for the amount due on the loan described above and requested that same be classified and paid as a preferred claim

under the provisions of § 3466, Rev. Stat., 31 U. S. C. A., § 191.

The guardian of the estate of the incompetent made his first report to the superior court for Kitsap county August 30, 1937. That report, in which it was asserted that the estate of the incompetent was insolvent, and which sets forth the claim of priority as made by the Federal housing administrator, was approved by the court, which found that the estate was then and at all times had been insolvent, and designated September 20, 1937, as the date of hearing upon the claim of priority by the United States government, on which date the question of priority of the claim of the United States was taken under advisement by the court.

An order was entered by the court January 10, 1938, adjudging the estate of the incompetent to be insolvent. The claim of the United States was denied priority. The state of Washington was allowed priority upon its claim for occupation and sales tax indebtedness, under Rem. Rev. Stat. (Sup.) § 8370-203 [P. C. § 7030-263 (Laws of 1935, p. 841, § 203)], owed by the incompetent to the state. The United States has appealed from that order.

The sole question presented by this appeal is whether a claim filed by the Federal housing administrator on behalf of the United States government against an insolvent estate is entitled, as against a claim of the state of Washington for occupation and sales taxes due the state, to the priority accorded to debts due the United States government under § 3466, Rev. Stat., 31 U. S. C. A., § 191.

Appellant United States seeks reversal of the order denying priority on the ground that the claim of the United States is entitled to priority under § 3466, Rev. Stat. (31 U. S. C. A., § 191), which provides that, whenever any person indebted to the United States is

insolvent, the debts due the United States shall be first satisfied.

Counsel for respondent state of. Washington cite *Federal Housing Administrator v. Moore,* 90 F. (2d) 32, as sustaining authority and contend that the order denying priority to the claim of appellant United States should be sustained on the grounds that the United States is not a creditor of the insolvent estate, the Federal housing administrator, as such, is not entitled to priority of payment of his claim, and even if the claim be a debt due to the United States, it is not entitled to priority of payment. That is, the note of the incompetent borrower did not have any right of priority at the time of its execution and delivery to a private banking corporation, to which—and not to the United States nor to the Federal housing administration—the borrower became indebted; the Federal housing administrator, to whom the note was assigned by the bank after default in payment by the borrower, succeeded (as did the United States if it be deemed the assignee) to only such rights as the assignor (who had no right of priority) had; and, under the provisions of Rem. Rev. Stat. (Sup.), § 8370-203, reading as follows, the claim of the state of Washington is entitled to priority:

"Any tax due and unpaid under this act, and all increases and penalties thereon, shall constitute a debt to the State of Washington and may be collected by court proceedings in the same manner as any other debt in like amount, which remedy shall be in addition to any and all other existing remedies. In all cases of probate, insolvency, assignment for the benefit of creditors, or bankruptcy, involving any taxpayer hereunder, the claim of the state for said taxes and all increases and penalties thereon shall be a lien prior to all other liens, except prior tax liens, and the mere existence of such cases or conditions shall be sufficient to create such lien without any prior or subsequent

action by the state, and in all such cases it shall be the duty of all administrators, executors, guardians, receivers, trustees in bankruptcy or assignees for the benefit of creditors, to notify the tax commission of such administration, receivership or assignment within thirty days from the date of their appointment and qualification. . . ."

■■ The authorities uniformly hold that, in the absence of statutory provision, the United States is not entitled to priority as a creditor; but that the United States has the power to give its debts priority over all debts, including debts due to a state, and that, by statute (31 U. S. C. A., § 191), the United States has priority in the payment of the debt of an insolvent.

"In the absence of statutory provision the United States is not entitled to priority or preference as a creditor. But the United States has power to give its debts priority over other debts, including debts due to a state, and by statute the United States has priority in the payment of the debt of an insolvent. The statute is valid, and should be liberally construed, or, in other words, should receive a fair and reasonable interpretation, and the priority thereby given cannot be impaired or superseded by state laws, and the burden of proof is on those claiming exemption from the statute. The word 'property' as used in the statute means all the property which the debtor possesses. The statute applies to all indebtedness due the United States, unless excluded by some other statute, and to all debtors, and to all property of the debtor, and the right of priority exists whether the insolvent be principal or surety, or be solely or only jointly liable, and it is immaterial where the debt was contracted. It does not, however, apply to an insolvent national bank." 65 C. J. 1368, § 145.

"At the common law the right of priority of payment of debts due to the government was a prerogative of the crown. It was founded not so much on any personal advantage to the sovereign as on motives of public policy, in order to secure an adequate revenue

to sustain the public burdens and discharge the public debts. In the United States such a right is given by an act of Congress (Rev. St. U. S. § 3466; 2 Fed. St. Ann. 2d ed. 216), and the same policy being apparently the basis of such legislation, enactments to that effect should not be given too strict and narrow an interpretation. Under this act in all cases of insolvency or bankruptcy of a debtor of the United States they are entitled to priority of payment out of his effects. It is also construed as extending to debtors generally. And the same right of priority which belongs to the government attaches to the claim of an individual who, as surety, has paid money to the government. If before the right of preference has accrued to the United States, the debtor has made a bona fide conveyance of his estate to a third person, or has mortgaged it to secure a debt, or if his property has been seized under an execution, the property is devested out of the debtor, and cannot be made liable to the United States. Nor does the priority of the United States extend so as to take the property of a partner from partnership effects to pay a separate debt due by such partner to the United States, when the partnership effects are not sufficient to satisfy the creditors of the partnership. In the case of national banks the act authorizing their formation is a separate code by itself, neither limited nor enlarged by other statutory provisions with respect to the settlement of demands against insolvents or their estates, and giving no preference to any claim, except for moneys to reimburse the United States for advances in redeeming the notes." 26 R. C. L. 1445-1446, § 45.

Congress has the power, and it has exercised that power in order to collect debts due to the United States, to confer priority for those debts over those of the states. *Spokane County v. United States,* 279 U. S. 80, 73 L. Ed. 621, 49 S. Ct. 321.

Appellant's right of priority exists, if it exists at all, by reason of 31 U. S. C. A., § 191, reading as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased

debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

There is no merit in the contention that, because the right of priority did not attach to the note in the hands of the lending bank when the note was executed, and that, because the bank had no right of priority at the time the note was assigned to the housing administrator, who was acting on behalf of the United States, the right of priority was not created when the note became the property of the United States. *Wagner v. McDonald,* 96 F. (2d) 273.

Priority of payment does not depend, under 31 U. S. C. A., § 191, upon how the United States acquired title to the note, nor upon the status of that note prior to its transfer.

"Priority is the result of insolvency of the debtor and ownership of the claim by the United States. In *Howe v. Sheppard,* 12 Fed. Cas. pp. 672, 675, No. 6,772, 2 Sumn. 133, Mr. Justice Story, as Circuit Justice for the District of Maine, held that a private judgment assigned to the United States prior to the death of the insolvent judgment ·debtor was entitled to priority over debts of the estate due private creditors under the statute. He said: 'And, if [the estate be] insolvent, are not the United States necessarily entitled to a priority as to all their debts by the very terms of the statute?' He answered: 'That the priority of the United States attaches to all debts, equitable, as well as legal.'

"In *United States v. Fisher,* 6 U. S. 358, 2 Cranch 358, 2 L. Ed. 304, the question was 'Whether,' under the statute, 'the United States are entitled to be first paid

and satisfied, in preference to the private creditors, a debt due to the United States by Peter Blight, as indorsor of a foreign bill of exchange, out of the estate of the bankrupt in the hands of assignees?' The bill had been purchased by an agent of the United States, but who did not declare himself to be such. In an opinion by Chief Justice Marshall the court held that the government was given priority by the statute." *Wagner v. McDonald,* 96 F. (2d) 273.

The fact that the debt assigned to the United States was originally a private debt is not material under the statute which accords priority to debts due the United States government. A sufficient answer to the argument that the Federal housing administrator, as such, is not a creditor of the insolvent estate and can not claim priority is that the administrator makes no claim to ownership of the debt in his own right. He expressly holds himself out and acts as the agent of the United States. The assignment from the bank came to him as Federal housing administrator, acting on behalf of the United States of America. The claim filed in the superior court alleged that the note had been duly assigned to Stewart McDonald as Federal housing administrator, "acting on behalf of the United States of America;" and the claim was filed by the administrator "acting on behalf of the United States of America." The administrator, who was appointed by the President and confirmed by the Senate, is an officer of the United States, with no authority under the statute to act for himself. The administrator is authorized by the statute (12 U. S. C. A., § 1703) to collect all obligations assigned to or held by him, in connection with the payment of insurance, until such time as such obligations may be referred to the attorney general for suit or collection.

As aptly stated in *Wagner v. McDonald,* 96 F. (2d) 273:

"In filing the claim here in controversy on behalf of the United States he [Federal housing administrator] was, therefore, acting under the direct mandate of Congress."

*Federal Housing Administrator v. Moore,* 90 F. (2d) 32, cited by counsel for respondent state of Washington, is not controlling. In that case, priority in bankruptcy was denied a claim of the Federal housing administrator. The decision apparently was bottomed on the fact that the claim was not filed on behalf of the United States or that the debt upon which the claim was based was not acquired by the administrator acting for the United States. The court stressed the fact that the debt was assigned to the administrator after the date of adjudication of bankruptcy. In the case at bar, the debt was assigned to the administrator prior to the adjudication of insolvency.

The argument that the debt in this case arose out of an ordinary insurance transaction, similar to the business ordinarily conducted by private persons, and that it should be governed by the same rules that apply to debts due to private persons, was also made by appellant in *Wagner v. McDonald,* 96 F. (2d) 273. We adopt the following language of the opinion in that case as a complete answer to the contention:

"The same argument was made with great ability in the *Fisher* case, *supra,* and the Supreme Court held it to be irrelevant to the construction of the statute and observed that priority is an ordinary regulation. In support of the proposition appellant cites the language of Judge Kenyon in *United States v. Miller,* 8 Cir., 28 F. 2d 846, 850, 61 A. L. R. 405: 'When the United States steps down from its plane of sovereignty and enters the domain of business and commerce, such as operating merchant vessels by a Shipping Board, or running railroads, or going into the insurance business, . . . it may well be claimed that it has

abandoned its sovereignty and submitted itself to the same laws that govern individuals engaged in that business.'

"In the *Miller* Case the action was brought by the United States to recover the value of timber taken unlawfully from public land. The defense was a state statute of limitations. After pointing out that the United States is not subject to a state statute of limitations when suing to protect the public domain, the court held that the government was acting in its sovereign capacity to enforce a public right and was therefore not barred, citing *Chesapeake & Delaware Canal Co. v. United States*, 250 U. S. 123, 39 S. Ct. 407, 63 L. Ed. 889. In the cited case the United States was suing to collect dividends upon the stock which it owned in the Canal Company, and the Supreme Court declared that in collecting public money the government was acting in its governmental capacity as much as if it were collecting taxes. In view of these decisions it is clear that the principle of law referred to, but not applied in the *Miller* Case, and now invoked by appellant, is not applicable here to limit the category of debts affected by § 3466.

"As pointed out by the Supreme Court in *United States v. State Bank of North Carolina*, 31 U. S. 29, 35, 6 Pet. 29, 8 L. Ed. 308, a claim of the United States for priority of payment 'does not stand upon any sovereign prerogative, but is conclusively founded upon the actual provisions of their own statutes.'

"Section 3466, R. S., 31 U. S. C. A. § 191, confers the right of priority."

Priority under the statute extends to all classes of debts due the United States. *United States v. Knott*, 298 U. S. 544, 80 L. Ed. 1321, 56 S. Ct. 902, 104 A. L. R. 741. 31 U. S. C. A., § 191 is not impaired by Rem. Rev. Stat. (Sup.), § 8370-203. Where the debtor is divested of his property, as in the case at bar, the guardian or person who becomes invested with the title is made trustee for the United States and bound first to pay its debt out of the debtor's property. The priority

given to the United States by the statute (31 U. S. C. A., § 191) can not be impaired or superseded by state law. *United States v. Oklahoma,* 261 U. S. 253, 67 L. Ed. 638, 43 S. Ct. 295.

In *Exchange Nat. Bank v. United States,* 147 Wash. 176, 265 Pac. 722, 62 A. L. R. 139, we held that, under the statute (§ 3466, Rev. Stat., 31 U. S. C. A., § 191) providing that the debts of the insolvent due to the United States shall be first satisfied and § 3186, Rev. Stat., giving the United States a lien therefor, the estate of an insolvent debtor is liable first for the debts due the United States; and in the event there are not enough assets of the insolvent to satisfy the claim for state taxes and the lien of the United States for Federal taxes, the claim of the United States is entitled to be first paid in full. We said:

"It is true that each sovereign is supreme in its own sphere, as argued by respondent, but we think that the cases cited in support of the proposition go no further than to hold that each sovereign, so far as concerns its own rights, has the power to make its own laws for their effectual enforcement untrammelled by the other.

"Out of the mass of authority presented to us, we find no case holding that, where each has the power to tax and that power has been exercised and the result has been such as to cause a square conflict as to which shall prevail, the power of the state is supreme. Such a holding would be contrary to the constitution of the United States, which declares the Constitution of the United States and laws made in pursuance thereof to be 'the supreme law of the land, in every state, and the judges shall be bound thereby.' When the state granted to the federal government the power to levy taxes it thereby gave up the right to maintain that its taxes should be superior to those of the Federal government if Congress by appropriate legislation declare their supremacy. . . .

"We now turn to the contention that, since the state

is not named in §§ 3186 or 3466, those sections will not be construed as binding upon the state. The argument is two-fold: First, it is said that a familiar rule of construction requires us to hold that, whenever a sovereign is not named in a statute, it is not bound by the act if it tends to restrain or diminish its rights or powers, unless it be one passed for the public good, such as the advancement of religion and justice, or to prevent injury or wrong. *Dollar Savings Bank v. United States,* 86 U. S. 227, 22 Law Ed. 80; *United States v. Herron,* 87 U. S. 251, 22 Law Ed. 273.

"In the cases cited the rule has not been applied between two sovereigns of the character we have here. It was frequently applied in England where an act of Parliament would, if construed strictly, abridge the rights or privileges of the King. In this country it has been applied in those cases where a sovereign's rights have been claimed to be abridged under a statute passed by its own legislative body. Here we have two sovereigns with one holding the right to prevail in case of conflict. We think it would unduly extend the rule to hold that the state must be specifically named therein to come under its provisions.

"The other branch of the argument is that Congress having exempted, under certain provisions, judgment creditors, purchasers and mortgagees, all of whom are inferior to a state's tax lien under state law, it seems inconceivable that Congress would have preferred them to a state tax, a lien of a sovereign power. There is much force to this argument. It would seem that there would be far greater reason for excepting a state tax lien than the others enumerated in § 3186, *supra,* but of course our duty is not to determine what liens Congress should have excepted, but to determine what it has, for, enjoying the power to except those which it desires, its choice must stand unassailed when coupled with the right to make it. To construe a further exception into the statute (§ 3186) is to legislate judicially—an abhorrent thing—while to hold that every debt is not made junior to debts due the United States under § 3466, *supra,* is to do violence to statutory construction."

The order is reversed, and the cause remanded with direction to the trial court to proceed in conformity to the views herein expressed.

STEINERT, C. J., BEALS, GERAGHTY, and SIMPSON, JJ., concur.

