**In the Matter of CHERRY VALLEY HOMES, INC., Debtor.**

**United States of America, Appellant.**

**No. 12533.**

United States Court of Appeals Third Circuit.

Argued April 21, 1958.

Decided June 2, 1958.

Chester A. Weidenburner, U. S. Atty., Newark, N. J. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Attorneys, Department of Justice, Washington, D. C., John H. Mohrfeld,

III, Asst. U. S. Atty., Camden, N. J., on the brief).

George F. Lynch, Washington, D. C., for appellant.

Josiah E. Du Bois, Jr., Camden, N. J., for debtor.

Before MARIS, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The disputed question here is whether the United States is entitled to have a certain claim paid out of the assets of Cherry Valley Homes, a corporation in reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 501–676, before provision is made for the claims of general creditors. The referee in bankruptcy and the district court denied the claim of priority, and the government has appealed.

Cherry Valley Homes, Inc., hereinafter "Cherry Valley", owed M. Tobin Co., hereinafter "Tobin", a liquidated sum of approximately $7,000 which was less than the amount of a tax claim which the United States had asserted with all prescribed formality against Tobin. In levying for taxes upon Tobin's property, the government had served appropriate process on Cherry Valley.[1] There is no suggestion that the notice to or demand upon this debtor was in any way inadequate as a levy upon the debt it owed Tobin. On the record we have a perfected levy upon specific incorporeal property of a taxpayer, namely, a liquidated sum owed Tobin by Cherry Valley. This levy occurred December 3, 1956. Cherry Valley did not file its voluntary petition for reorganization until May 28, 1957.

In legal contemplation and consequence, this levy effectively and exclusively appropriated the debt to the satisfaction of the tax claim six months before the Chapter X proceeding was instituted. United States v. Liverpool & London & Globe Ins. Co., 1955, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; Kyle

v. McGuirk, 3 Cir., 1936, 82 F.2d 212; United States v. Eiland, 4 Cir., 1955, 223 F.2d 118. Such a levy is treated in law like a seizure of corporeal property, taken into the possession of a collector by way of distraint for taxes. See Freeman v. Mayer, 3 Cir., 1958, 253 F.2d 295, 298; 26 U.S.C. §§ 6331, 6332. Appellant recognizes that such a levy at least makes the government a lienor, with a perfected right to have the entire debt paid to it. By whatever name the appropriation shall be called, it seems clearly sufficient to establish a priority of right to satisfaction which the debtor's subsequent insolvency does not affect.

Alternatively, as the government urges here, since the possessory concept of "seizure" is not strictly applicable to a debt, it seems correct to say that the tax levy through process served upon the debtor at least accomplished an assignment of Tobin's claim against Cherry Valley to the United States by operation of law. This approach brings into decisive effect the provision of Revised Statutes, Section 3466, 31 U.S.C.A. § 191, that "whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied." This language has been applied to claims, originally between private parties, the benefit of which has in various ways been assigned or transferred to the United States. Korman v. Federal Housing Adm'r, 1940, 72 App. D.C. 245, 113 F.2d 743; Wagner v. McDonald, 8 Cir., 1938, 96 F.2d 273; Howe v. Sheppard, C.C.D.Me.1835, 12 Fed.Cas. No. 6,772, p. 672; In re Dickson's Estate, 1938, 197 Wash. 145, 84 P.2d 661. We think it applies here as well.

Finally, it is argued in a general way that there is some lack of equity in the priority thus accorded the government. But we see no inequity in recognizing that the government acquired a priority over general creditors when its claim was asserted and perfected against the debt owed by Cherry Valley many months be-

---

1. Actually, three wholly owned subsidiaries of Cherry Valley were served, but the referee and the district court have treated Cherry Valley as the real party concerned and affected.

fore Chapter X proceedings were instituted. To make the argument of inequity even colorable, though not necessarily sound, it would have to appear that Cherry Valley was insolvent when the levy was made upon the debt it owed. And nothing of the sort appears in this record.

The judgment will be reversed.