ALBERT J. RIVARD *et al. vs.* BIJOU FURNITURE COMPANY.

JULY 23, 1941.

ON REARGUMENT OCTOBER 23, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

252

CAPOTOSTO, J. This is a bill of complaint praying for the dissolution of the defendant corporation and for the appointment of a receiver. The only question which is now before us in this cause is that of priority as to the following claims: A claim of $230.51 by the United States for taxes due to the federal government for the years 1937 to 1940, solely under Title VIII of the federal social security act, c. 531, 49 Stat. 620, as amended, hereinafter called the federal act; a claim by the state of Rhode Island for corporate excess taxes in the sum of $145.74; a claim of $155.09 by the state of Rhode Island for contributions to the unemployment compensation fund of this state, under general laws, 1938, chapter 284, as amended, entitled unemployment compensation act, hereinafter called the compensation act; and a claim of the city of Central Falls for taxes in the sum of $507.47.

For the purposes of this cause, it is admitted: First, that the claim of the United States under the federal act is correct in amount and was due prior to the receivership proceedings; second, that the claim of the state of Rhode Island under the compensation act falls in the same category; third, that no lien is involved; and fourth, that after payment of administration expenses, the total remaining assets of the insolvent's estate is the sum of $310.02. In these circumstances, the trial justice directed the receiver to pay in full the claim of the state of Rhode Island under the compensation act, and to pay, *pro rata,* the other three claims. The United States has appealed to this court from

a decree of the superior court entered in accordance with this ruling.

The United States contends that under the U. S. Revised Statutes, sec. 3466 (U. S. C. Title 31, sec. 191) its claim is entitled to priority over all other claims, and that such claim should be paid in full, if there is sufficient money in the hands of the receiver, before payment in any amount is made to other claimants. The pertinent part of that statute is as follows: "Whenever any person indebted to the United States is insolvent, . . . the debts due to the United States shall be first satisfied . . . ."

Sec. 3466 is of ancient origin. Act of 1797, c. 20; 1 Stat. 515. It was amended by an Act of 1799, § 65, c. 22; 1 Stat. 676. Its language has been varied very little since these original enactments. The section has been repeatedly considered by the supreme court of the United States, which has consistently held that such section, when applicable, was to be liberally construed in favor of the federal government. *United States* v. *Knott,* 298 U. S. 544; *New York* v. *Maclay,* 288 U. S. 290; *Spokane County* v. *United States,* 279 U. S. 80; *United States* v. *Butterworth-Judson Corp.,* 269 U. S. 504; *Stripe* v. *United States,* 269 U. S. 503; *Price* v. *United States,* 269 U. S. 492; *Bramwell* v. *United States Fidelity & Guaranty Co.,* 269 U. S. 483; *United States* v. *National Surety Co.,* 254 U. S. 73; *United States* v. *Snyder,* 149 U. S. 210.

In *Price* v. *United States, supra,* where competing tax claims of federal and state governments were under consideration, the word "debts" used in the section was held to include taxes. That case, and other subsequent decisions of the United States supreme court to the same effect, were. cited with approval in *Spokane County* v. *United States, supra,* where the issue also was the priority of federal non-lien tax claims over similar claims of the state government or subdivisions thereof. It is now beyond question that in an equity receivership non-lien tax claims of the United States, arising before the appointment of a receiver, have

priority over all other competing claims of a similar character. *Spokane County* v. *United States, supra.*

In view of these decisions, firmly binding on us, we find clear error in the ruling of the trial justice, which denies priority to the claim of the United States over the claim of the state of Rhode Island for corporate excess taxes and the claim for taxes by the city of Central Falls. As the United States suggests, the trial justice may have fallen into this error by confusing the rule of priority in bankruptcy cases with that which controls in receivership proceedings. The priorities in these two classes of cases are quite different and must be kept in mind to avoid confusion and error. Sec. 3466, which applies in receivership proceedings, has no application in bankruptcy cases, and *vice versa.* Hence, federal claims have generally been preferred in equity receiverships, without regard to the order of payment established by the bankruptcy act or state priority laws. *Matter of Kupshire Coats, Inc.*, 272 N. Y. 221 (1936); *Matter of Lincoln Chair & Novelty Co., Inc.*, 274 N. Y. 353 (1937); *Matter of Dickson's Estate*, 197 Wash. 145 (1938). For a discussion of this point, with the citation of numerous decisions, see Rogge, The Differences in the priority of the United States in Bankruptcy and in Equity Receiverships (1929), 43 Harvard Law Rev. 251.

The real question in this case is whether sec. 3466 gives priority to the claim of the United States for taxes under the federal act over the claim of the state of Rhode Island for the "contributions" of employers and employees of this state to the state unemployment fund under the compensation act. This question is of first impression and not free from doubt. No authority, dealing even indirectly with the precise point now before us, has been cited by the parties, and we have found none.

We are aware that in *Price* v. *United States, supra,* the supreme court of the United States, in holding that the word "debts" in sec. 3466 included taxes, stated that the purpose of that section was not to be defeated by unneces-

sarily restricting the application of the word "debts" within a narrow or technical meaning. We do not construe this statement of that court as a mandate that, because of sec. 3466, all claims of the United States shall be accorded priority in equity receiverships without regard to existing circumstances, and in disregard of interrelated social legislation by federal and state governments which is designed to accomplish a common purpose. This brings us to a consideration of the character of the claims advanced by the United States and the state of Rhode Island in the instant cause.

It is clear that the federal act and the compensation act are comparatively recent enactments of progressive social legislation intended to alleviate the principal causes of insecurity in the economic life of this country. When a state compensation act is approved by the United States in accordance with the provisions of the federal act, the two statutes interlock in a number of material respects, the following being of special significance: First, the grant of money to the state by the federal government to help defray the cost of administering the compensation act; and second, the retention of custody and control by the United States over the compensation fund, which the state can use solely to pay unemployment benefits.

The federal act itself does not establish a system of unemployment compensation, since no provision is made therein for the payment of benefits to the unemployed. It defines such a system and seeks to encourage the state, by way of grants and other inducements, to establish that system for relief of its unemployed. Upon the adoption by the state and approval by the United States of such a system, the state is charged with direct responsibility for the administration of its own unemployment compensation laws, subject however to the guidance and assistance of the federal government.

The compensation act of this state which has been approved by the United States, in accordance with the pro-

visions of the federal act, establishes an unemployment compensation fund and an unemployment administration fund. The moneys in each of these funds come from different sources and are to be used for entirely different purposes. The compensation fund receives only the moneys which the compensation act requires certain employers and employees to pay as their respective "contributions" to that fund, plus whatever other sums may accrue by way of interest or penalties for delay or nonpayment of such contributions. The administration fund consists of all moneys received by the state from the United States and other sources for the administration of the compensation act. The moneys in the former fund can be used solely for the payment of benefits to the unemployed, while the moneys in the latter fund can be used only for administrative purposes.

The handling of these two funds is of great significance. The state treasurer is the custodian of all moneys belonging to the compensation fund, but the moneys received by such fund are required to be deposited or invested in the unemployment trust fund established by the United States government, with the exception of the sums requisitioned by the state for unemployment relief. A separate account of moneys so deposited by the state is maintained by the United States. The secretary of the treasury is the trustee of this fund, and the state unemployment compensation board, which is charged by the compensation act with the duty of administering that law, is the beneficiary of the trust. No such requirements attach to the administration fund. The state treasurer is the sole custodian of this fund.

The compensation act throughout speaks of "contribution" by employer and employee to the unemployment fund. The word "tax" does not appear in the act. We appreciate that this terminology is not in itself of controlling force, and that a "contribution" imposed by law for a public purpose may well be, and in the instant cause probably is, a "tax"

within the legal meaning of that term. But the use of the word "contribution" instead of "tax" in the compensation act, which has the approval of the United States government, is a circumstance to be considered in determining the precise question now before us.

Under Sec. 5 of the compensation act, the required contributions from employers to the unemployment fund, which are levied on the basis of a yearly payroll, are payable in such manner and at such times as the state unemployment compensation board may prescribe. The requirements of the act respecting contributions from employees are more specific. An employer is required to withhold such contributions from the wages of his employees at the time such wages are earned or paid; he shall show such deduction on his payroll records; he shall furnish to the employees proper evidence of such deduction, and he shall transmit all such contributions to the unemployment fund pursuant to regulations of the board. Compliance with these requirements by an employer divests the employees of their respective rights of property in the moneys represented by such contributions. Thereafter, until the contributions, so accruing and allocated, are actually paid over to the state unemployment fund, the employer holds title to such moneys as trustee for the state, which in turn is bound by the federal act to deposit such moneys in the unemployment trust fund of the United States.

The taxes imposed by the federal act are levied and collected from employer and employee in a somewhat similar manner. These taxes are all paid into the treasury of the United States for allotment and distribution, as occasion requires, to carry out the general purposes of that act. The employees' tax collected by an employer under the federal act is a special trust fund in trust for the United States.

Giving due consideration to the matters hereinbefore stated, it appears to us that the instant cause presents a conflict between two equitable trust claims of equal dignity and importance. Although the claims of the United States

and of the state of Rhode Island arise under different statutes, yet, in so far as the two statutes deal with the common subject of unemployment compensation, they are interlocking statutes, closely interrelated and dependent on each other to effectuate a common purpose. In effect, the compensation act is but an appendage to the federal act. Both statutes are enacted for the special purpose of relief to the unemployed in times of economic distress. The maintenance and growth of the compensation fund created under these statutes, which fund is segregated and held in special trust by the United States, are matters of deep concern to both the federal and state governments.

It is clear to us that the intention of congress in the federal act was to have the federal government guide and assist the state in a comparatively new field of legislation. It is also clear that congress deemed cooperation between the two governments indispensable for success. To permit the claimed preference by the United States would conflict with the policy, spirit and broad purposes of the federal act. In the circumstances, we believe that congress intended to exclude the indebtedness to the United States in the case before us from the scope of sec. 3466. *United States* v. *Guaranty Trust Co.*, 280 U. S. 478; *Mellon* v. *Michigan Trust Co.*, 271 U. S. 236. See *United States* v. *Marxen*, 307 U. S. 200, 206. It is therefore our opinion that said sec. 3466 is inapplicable in this case to the claims now under consideration.

The question that next arises is whether the claim of the state should be preferred to that of the United States. The state, relying upon *Steward Machine Co.* v. *Davis*, 301 U. S. 548, contends that it is entitled to such preference. In that case, the supreme court of the United States, in sustaining the constitutionality of Title IX of the federal act against the charge of coercion of the states, recognized the fact that the policy adopted by congress in the matter of unemployment relief was to have the public agencies concerned "work to a common end", and that under such policy the needs

of the federal treasury could be cared for as well by payment of unemployment compensation contributions to the states as by payment of taxes to the United States. The state therefore argues that in the instant case its claim should be preferred over that of the United States.

There is considerable force and merit in the state's contention. But we believe that the policy of congress in the matter of unemployment relief as disclosed in the federal act, which policy was adopted by the state when it adopted its compensation act, will be best served in working out the "common end" envisaged by the provisions of those statutes now under consideration by giving parity to the claims of both the United States and of the state, as claims of equal dignity and importance, in the following manner.

The claims of the United States and of the state include, as separate and component parts thereof, contributions collected by the employer from its employees, and contributions due from the employer itself. In the circumstances, that portion of the claim of the United States and of the state which represents contributions from employees should first be paid in full; the balance, in so far as it permits, should be paid pro-rata in satisfaction of that portion of both federal and state claims which represents contributions due from the employer.

The appeal of the United States is sustained, and the decree appealed from is reversed.

The parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

### On Reargument

Per Curiam. After the opinion in this cause was filed, the United States, by leave of court, was permitted to file its motion for reargument. As the grounds of that motion, it contends first, that the court, in deciding the claim of the United States for priority respecting the sum of $230.51 due and payable to the federal government under the social security act, applied the provisions of Title IX, as amended,

rather than those of Title VIII, as amended, of that act; and second, that the court failed to consider the claim for priority urged by the United States respecting a capital stock tax in the sum of $3.23.

Limited to these contentions, the motion of the United States for reargument is granted.