ILLINOIS ex rel. GORDON, DIRECTOR OF LABOR, *v.* UNITED STATES.

No. 749. Argued March 28, 1946.—Decided April 22, 1946.

*Albert E. Hallett,* Assistant Attorney General of Illinois, argued the cause for petitioner. With him on the brief was *George F. Barrett,* Attorney General.

*J. Louis Monarch* argued the cause for the United States. With him on the brief were *Solicitor General McGrath, Acting Assistant Attorney General Sewall Key* and *Helen Goodner*.

MR. JUSTICE BLACK delivered the opinion of the Court.

In this case the Supreme Court of Illinois held that certain tax claims of the Federal Government against an insolvent taxpayer must be satisfied in full before the State of Illinois can recover amounts due as taxes under its Unemployment Compensation Act. 391 Ill. 29, 62 N. E. 2d 537. This decision is substantially in conflict with that of the Supreme Court of Rhode Island in *Rivard* v. *Bijou Furniture Co.*, 67 R. I. 251, 21 A. 2d 563, 68 R. I. 358, 27 A. 2d 853, and we granted certiorari to resolve this conflict.

The claim of the United States is for federal unemployment compensation taxes under Title 9 and federal insurance contributions taxes under Title 8 of the Social Security Act, 49 Stat. 620.[1] The priority claimed by the United States rests on R. S. 3466, which provides in part that "Whenever any person indebted to the United States . . ., not having sufficient property to pay all his debts, makes a voluntary assignment" of his property, "the debts due to the United States shall be first satisfied."

The State concedes that the facts here bring the United States' tax claims within the general priority provisions of § 3466. The taxpayer while insolvent had made a voluntary assignment of all his property for the benefit of creditors. And it is well settled that taxes are debts within the meaning of § 3466. *United States* v. *Waddill Co.*, 323 U. S. 353, 355. The State's only contention is that the

---

[1] A small part of the Government's claim was for capital stock taxes, but this fact is of no significance here.

Social Security Act evinces a congressional purpose to free state unemployment tax claims from the general priority provisions of § 3466.

The State draws its inference not from an express declaration of congressional purpose, but from what it deems to be broad implications behind the general scheme of the Social Security Act. The contention is that enforcement of priorities over state unemployment compensation tax claims would weaken state unemployment compensation funds and thus tend to frustrate the manifest purpose of Congress to foster, in the national interest, sound financial and stable state unemployment compensation systems. The State points to the following as showing Congress' interest in state systems. Title 9 of the Social Security Act contains provisions intended to induce states to set up sound unemployment compensation in accordance with congressionally prescribed standards. To this end state systems that meet these standards are permitted to build up their own funds by collection from employers within the state of 90% of the tax those employers would otherwise have to pay to the Federal Government. State funds must be paid into the United States Treasury, to be credited to a special fund, and can be withdrawn only for paying unemployment benefits. Furthermore, the federal portion of unemployment compensation taxes can be used to help states pay administrative expenses. And Congress, since passage of the original Act, has enacted legislation guaranteeing the solvency of state funds. 58 Stat. 790. All of these facts, and some others to which the State refers, are said to show that the paramount purpose of the social security legislation was to treat unemployment relief as a problem to be solved by the Federal Government by its assumption of the primary burden of making state systems a success.

We agree that the social security legislation provides a method for accomplishing state and federal unemployment relief systems, integrated in plan, function, and purpose, and that sound state systems are essential to complete success of the congressional plan. But we cannot agree that Congress thereby intended in effect to amend § 3466, by making its priority provisions inapplicable to state unemployment tax claims. For while the state and federal governments were to cooperate, the underlying philosophy of the Federal Act was to keep the state and federal systems separately administered. The Act nowhere indicates a purpose to treat a state unemployment claim as the State here urges us to treat its claim—"tantamount to a claim of the United States."

Furthermore, §§ 807 (c) and 905 (b) of the Federal Act, and the provisions they incorporated by reference, made applicable to social security taxes all other provisions of law relating to the assessment and collection of other taxes unless such other remedies are inconsistent with the Social Security Act. While there is no evidence that Congress in these sections had § 3466 specifically in mind, these provisions indicate that Congress intended, so far as practicable, to apply to social security taxes all of the remedies available to the Federal Government in collecting other taxes. Section 3466 provides one of these remedies. Since, as has been indicated, it is not inconsistent with either the express language or purpose of the Social Security Act, it must be applied here.

Previous decisions of this Court relied on by the State do not support its contention. Those cases, insofar as they held that § 3466 did not give the United States priority over certain other types of claims, did so because later Acts were found to contain provisions plainly inconsistent with United States priority. *Cook County Na-*

*tional Bank* v. *United States,* 107 U. S. 445; *United States* v. *Guaranty Trust Co.,* 280 U. S. 478. Cf. *United States* v. *Emory,* 314 U. S. 423, 431–432. We find no such inconsistency here. And "only the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of § 3466." *United States* v. *Emory, supra,* 433.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.