PAUL H. HODGE *vs.* THEODORE W. FOSTER & BRO. CO., INC.

JULY 3, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This is a proceeding within the receivership of the respondent corporation. In the superior court, after a hearing on the receiver's disallowance of priority to an alleged secured claim filed by Francis Taylor, a decree was entered denying such preference. The cause is here solely on the claimant's appeal from that decree.

Francis Taylor, the appellant, was the owner of 90 per

cent of the stock of Theodore W. Foster & Bro. Co., Inc., the corporation in receivership, and had acted as its president and general manager. In effect he had filed two claims: one in the sum of $8,300 which he alleged was secured by an equitable lien against all the assets of the corporation and therefore was entitled to priority over all unsecured claims; and another in a much larger sum representing loans or advances made by appellant to the corporation on which indebtedness he admittedly was a general creditor. The present appeal relates only to the alleged secured claim of $8,300, the nature of which will be hereinafter discussed.

Several other claims had been filed by different creditors, including one by the United States bureau of internal revenue for income and other taxes. The federal government claimed priority therefor under section 3466 of the Rev. Stat. of the United States, 31 U.S.C.A., §191, which reads as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied * * *."

The receiver filed a petition for instructions as to all the claims referred to, including the appellant's instant claim, and a hearing was held thereon in the superior court at which no testimony was taken. Apparently the procedure adopted was for the counsel for each claimant to make a statement in the nature of an offer of proof in support of his claim. These statements, in the absence of particular objection by the receiver or any creditor, were then accepted by the court as prima facie evidence.

In addition to the above-mentioned facts it appears from such a statement by counsel for appellant that about nine months before the corporation was petitioned into receivership, namely, on April 30, 1948, the corporation was solvent; that the appellant, by vote of the board of directors of the

corporation, had been entitled to $10,000 per annum for services as president and manager thereof; and that $8,300 of such salary was then due and owing to him.

According to such statement, because of the status of the corporation's business finances on that date there was need for more ready cash; that a meeting was then held in the appellant's office; and that at that time "there was an understanding and agreement that Mr. McOsker [possibly an accountant] was to put on the records of the corporation the sum of $8,300.00 which was due and owing and Mr. Taylor said: 'I am willing to forego that money at the present time although I am entitled to it. Now we need a little more ready cash but I want it clearly understood that it is to be charged against the assets of the corporation.' That was the understanding and the agreement. It was to verify that situation that Mr. McOsker is here * * *."

It was further stated by counsel for appellant that there were sufficient assets at the time to pay such amount of salary but that Mr. Taylor said he was willing to let "the corporation take it because they need it at this time" but that "any time I want to take it, I want to be able to take it," and that he instructed Mr. McOsker to "Set it up that way. That's the understanding." Apparently the sum of $8,300 was carried "week after week, month after month" before receivership "on the records of the corporation, as Mr. McOsker will testify."

However, no records of the meetings of the stockholders or directors were placed in evidence and none were specifically referred to by appellant's counsel in his statement. Nor was any corporation record showing that transaction placed in evidence. Moreover it nowhere appears whether the meeting referred to was a stockholders' or directors' meeting, or whether it was attended by any persons other than appellant and McOsker, or whether the latter was a mere accountant under appellant's direction or an officer with authority to bind the corporation by contract.

The appellant is concerned here solely with his claim in

the sum of $8,300 which he alleges was secured by an equitable lien based upon an oral agreement. He concedes in argument that this claim in any event would not have priority over the fees of the receiver and his attorney and the expenses of the receivership, and that there is not enough money to pay those preferred claims and also the claims of the United States government and the one in question here.

· The appellant contends chiefly that on April 30, 1948 he and the corporation agreed that all the assets of the company, present and future, should be charged and held as security for the payment of said $8,300; and that the oral agreement gave him an equitable lien against all the assets of the corporation which entitled his claim to security and priority over the claims of all unsecured creditors. It is urged that such contract need not be in writing as it concerned personal and not real property; that it did not require recording because it was not a personal property mortgage; and that the property was sufficiently described or rendered capable of identification to comply with the general rule concerning the necessity of describing particular property against which a lien is claimed, citing generally, among others, *Groton Manufacturing Co.* v. *Gardiner,* 11 R. I. 626, and *Matteson* v. *Sweet & Son, Inc.,* 58 R. I. 411.

He further argues that the United States government is not a secured creditor; that since there is no statutory priority in Rhode Island among creditors in a receivership proceeding, the priority if any would have to be found in the national bankruptcy law; and that the priority accorded to such claims of the federal government under the bankruptcy law are related entirely to *unsecured* creditors and not to antecedent lien or secured creditors.

In our judgment the procedure adopted at the hearing on these claims is understandable in the administration of a receivership providing there is to be no appeal from any finding upon disputed claims. But where a claimant is seeking to have us review a decree in connection with a

disallowed claim, the absence of any stipulation of all necessary facts agreed to by the parties, or of a transcript of all the testimony relied on by them, makes it difficult to pass upon the decree. Here we have no such stipulation or transcript. Moreover we find no *reasons* for the trial justice's decision appearing in the decree or elsewhere. Upon this record his final conclusion may have been premised on findings of fact or law, or both.

If it were based on findings of fact, as it could have been, we cannot say from this sketchy record that he was clearly wrong. Assuming, without deciding, that an *oral* contract is sufficient to create an equitable lien and that the general description of a charge "against the assets" was adequate to identify the property to which the instant lien was to attach, it is clear from all the pertinent cases that because of its oral and unrecorded nature a valid contract of this kind must first be convincingly established.

In this connection it will be observed that there is no reference in the statement of appellant's counsel that can be reasonably extended to amount to prima facie evidence that at a regular or special meeting of the corporation it was voted to authorize or approve the alleged oral agreement relied on by appellant as the basis of his equitable lien. Nor is there evidence that any particular officer of the corporation with authority to bind it had entered into such an agreement on its behalf. For all that appears, Mr. McOsker may have been the only other person present at the meeting in appellant's office and may have been a mere employee or accountant taking directions from the appellant individually. Certainly if the trial justice had premised his decision upon such findings of fact there is no convincing evidence to the contrary to warrant a conclusion that he was clearly wrong.

Similarly there is no clear evidence that the United States government was only an unsecured creditor as appellant argues. For all that appears the federal government had filed its lien for unpaid taxes so that it would be entitled

in any event to priority under the above-quoted section of the federal statute. See also *Illinois ex rel. Gordon* v. *United States,* 328 U. S. 8, which was brought to the attention of the trial justice at the hearing.

In the circumstances, therefore, if we assume that an oral agreement can be accepted as the basis of an equitable lien, we are of the opinion that on this record the trial justice might well have decided the question on a finding of fact to the effect that appellant had not established, by convincing evidence, the existence of a valid contract which was binding upon the corporation and receiver. In that event appellant would not be entitled to a secured lien having priority over all other creditors including the United States government.

The appeal is denied, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Curran & Friedman, Charles A. Curran,* for appellant.
*Louis V. Jackvony, Jr.,* for receiver.