## ENGLEMAN v. COMMODITY CREDIT CORP.

### Civ. No. 13833-C.

United States District Court
S. D. California, Central Division.

Sept. 30, 1952.

Craig, Weller & Laugharn, Los Angeles, Cal., for plaintiff.

Walter S. Binns, U. S. Atty., Clyde C. Downing, Asst. U. S. Atty., Reuben Rosensweig, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

JAMES M. CARTER, District Judge.

The case is one of first impression. The action is for declaratory relief and the question presented is the effect of Revised Statutes, § 3466, 31 U.S.C.A. § 191, generally giving priority to debts due the United States, on an assignment for the benefit of creditors where the defendant holds the claim of one of the creditors, transferred to it after the assignment for the benefit of creditors.

Peters, a grain merchant, on August 14, 1951, made to plaintiff Engleman an assignment for the benefit of his creditors. At that date Peters was indebted to Smith, another grain merchant, in the sum of $98,-801.60 for grain sold by Smith to Peters.

On January 11, 1952, almost six months after the assignment to creditors, Smith assigned his claim to defendant, Commodity Credit Corporation. Thereafter, defendant filed a claim with plaintiff for $98,801.60 and in this action claims priority in payment over other creditors under R.S. § 3466, 31 U.S.C.A. § 191.

Total claims made to plaintiff-assignee approximate $590,000; the assets will not pay all the claims; hence the concern over the defendant's claim to priority.

Prior to the assignment from Smith to defendant Commodity Credit Corporation, Peters had no dealings with the defendant Commodity Credit Corporation or the United States concerning any of the items in the claim and was not indebted to the defendant Commodity Credit Corporation or the United States in connection with said transaction.

Smith, however, prior to his assignment to defendant Commodity Credit Corporation on January 11, 1952, owed the defendant Commodity Credit Corporation approximately the amount of the claim assigned to Commodity Credit Corporation and assigned the claim, not in satisfaction of the monies he owed defendant, Commodity Credit Corporation, but as security, so that any amounts obtained by defendant Commodity Credit Corporation on Smith's assigned claim would be used pro rata to extinguish the debt of Smith to defendant, Commodity Credit Corporation.

932

The exhibits show that Smith was buying grain from defendant Commodity Credit Corporation and there is no other conclusion but that his debt of $98,801.60 to defendant Commodity Credit Corporation was for grain purchased from them. It was this same grain, bought by Smith from defendant Commodity Credit Corporation, that he in turn sold to Peters, resulting in debt from Peters to Smith.

The Law:

■ The court concludes that the defendant Commodity Credit Corporation[1] is not entitled to priority on the payment of its claim under R.S. § 3466, 31 U.S.C.A. § 191, and bases its decision on two alternate grounds.

I

R.S. § 3466, by its terms, does not apply where the United States acquires its claim after an assignment for the benefit of creditors.

The statute reads in part:

"Section 191. Priority established. Whenever any person indebted to the United States is insolvent, * * *, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. (R.S. § 3466.)"[2]

A reading of the statute would indicate that by "debts due to the United States" are meant only the debts due and owing the United States at the time of the assignment for the benefit of creditors.

The Georgetown Law Journal, Volume 33, page 279, at 282, states:

. "The proper construction of Section 3466, which gives priority to debts 'due' to the United States, is that it gives priority not only to debts actually due at the time of the assignment, but also to those to become due thereafter, *if they were owing at the time of the assignment.* The word 'due' as used in the statute is synonymous with the word 'owing.'" (Emphasis added.)

The statement is a fair summary of the holding of the Supreme Court in United States v. State Bank of North Carolina, 1832, 6 Pet. 29, at page 38, 8 L.Ed. 308, which is the case cited as authority for the Law Journal statement.

■ The act of bankruptcy or insolvency puts into effect the priority of the United States. If no debt is at that time due the United States, there is of course no claim upon which priority attaches. It is not the birth of the claim of the United States that creates priority; but the act of bankruptcy or the insolvency or the assignment for the benefit of creditors acting upon an existing claim, that creates the priority.

In Bramwell v. United States Fidelity & Guaranty Co., 1926, 269 U.S. 483, at page 487, 46 S.Ct. 176, at page 177, 70 L.Ed. 368, the Supreme Court said:

"The act applies to all debts due from deceased debtors whenever their estates are insufficient to pay all creditors, and extends to all debts due from insolvent living debtors when their insolvency is shown in any of the ways stated in section 3466. The decisions of this court show that no lien is created by the statute; that *priority does not attach while the debtor continues the owner and in possession of the property; that no evidence can be received of the insolvency of the debtor until he has been divested of his property in one of the modes stated;* and

These rights are contained in R.S. § 3466.

1. Title 15 U.S.C.A. § 714, makes Commodity Credit Corporation an agency of the United States; with "all the rights, privileges, and immunities of the United States with respect to the right to priority of payment with respect to debts due from insolvent * * * or bankrupt debtors." 15 U.S.C.A. § .714 (b), (e).

2. For a general discussion concerning R.S. § 3466, see Comment, "Securities—Claims of the United States—Revised Statutes, Section 3466." 15 Sou.Calif.Law Review 486.

that, '*whenever he is thus divested of his property, the person who becomes invested with the title, is thereby made a trustee for the United States, and is bound to pay their debt first out of the proceeds of the debtor's property.*' Beaston v. Farmers' Bank, supra, [12 Pet. 102], 133 [9 L.Ed. 1017], and cases cited; United States v. Oklahoma, 261 U.S. 253, 259, 43 S.Ct. 295, 67 L.Ed. 638." (Emphasis added.)

and 269 U.S. at page 490, 46 S.Ct. at page 178:

"* * * Taken together, these sections mean that a *debt due the United States is required first to be satisfied when the possession and control of the estate of the insolvent is given to any person charged with the duty of applying it to the payment of the debts of the insolvent, as the rights and priorities of creditors may be made to appear.*" (Emphasis added.)

United States v. Marxen, 1939, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222, relied on the Bramwell case, supra. The court said, 307 U.S. at page 207, 59 S.Ct. at page 815:

"* * * the rights of creditors are fixed by the Bankruptcy Act as of the filing of the petition in bankruptcy. This is true both as to the bankrupt and among themselves. The assets at that time are segregated for the benefit of creditors. The transfer of the assets to someone for application to 'the debts of the insolvent, as the rights and priorities of creditors may be made to appear,' takes place as of that time."

In the case of United States v. Knott, 298 U.S. 544 at page 549, 56 S.Ct. 902, at page 905, 80 L.Ed. 1321, Justice Brandeis, in discussing the right of the Government to priority under R.S. § 3466, where the assets of the insolvent debtor were being liquidated by the New Jersey Banking & Insurance Commissioner, said:

"The question for our decision is the legal effect upon the asserted federal right of the statute so construed. As was said in Thelusson v. Smith, 2 Wheat. 396, 426, 4 L.Ed. 271: 'The United States are to be first satisfied;

but then it must be out of the debtor's estate. If, therefore, *before the right of preference has accrued to the United States,* the debtor has made a *bona fide* conveyance of his estate to a third person, or has mortgaged the same to secure a debt, or if his property has been seized under a *fi. fa.*, the property is divested out of the debtor, and cannot be made liable to the United States.'" (Emphasis added.)

In the case of People of State of New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754, involving priorities between the State of New York for taxes, and debts due the United States for taxes and for which the United States claimed priority under Section 3466 of the Revised Statutes, Justice Cardozo, in the course of his opinion, said:

"Receivers of the corporation were appointed by a consent decree in January, 1927, and creditors were directed to file their claims. The decree had the effect of a general assignment. Price v. United States, 269 U.S. 492, 502, 46 S.Ct. 180, 70 L.Ed. 373.

"* * * The receivers were appointed, as we have seen, in January, 1927; and the petitioner, if not preferred at the time of the appointment, did not win itself a preference by anything done thereafter. United States v. Oklahoma, 261 U.S. 253, 260, 43 S.Ct. 295, 67 L.Ed. 638."

To the same effect see United States v. Texas, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356.

In the case of United States v. Oklahoma, 261 U.S. 253, 260, 43 S.Ct. 295, 298, 67 L.Ed. 638, involving an insolvent bank taken over by a State Banking Commissioner for liquidation, the court said:

"* * * The priority given the United States cannot be impaired or superseded by state law. If priority in favor of the United States attaches at all, it takes effect immediately upon the taking over of the bank."

In People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, at page 376,

67 S.Ct. 340, at page 348, 91 L.Ed. 348, Justice Rutledge said:

"* * * The state has acquired neither title nor possession, Thelusson v. Smith, 2 Wheat. 396, 4 L.Ed. 271; People of State of New York v. Maclay, 288 U.S. at page 290, 53 S.Ct. 323, 77 L.Ed. 754, since the receiver's possession was that of the court, not of the state; and did not sever the property *from* the debtor's general assets as of the crucial date."

Footnote 38 to Com. of Massachusetts v. United States, 1948, 333 U.S. 611, 68 S.Ct. 747, 92 L.Ed. 968, infra, in discussing exceptions to and departures from R.S. § 3466, is most illuminating. We have set forth parts of it hereafter in this opinion. 107 F. Supp. 935, 936 footnote 4.

The lower courts have been more explicit. In Re Hansen Bakeries, 3 Cir., 1939, 103 F. 2d 665, at page 667, the court said:

"In Section 3466, Revised Statutes, the Congress, by referring to 'any person indebted to the United States,' has made it sufficiently clear that the debts due the United States as to which priority is to be given in bankruptcy are those only which were owing to the United States by a person, namely the bankrupt prior to his bankruptcy. There is certainly no manifest intention shown by the act to grant priority to a debt which the bankrupt himself never owed to the United States, but which represents merely an assignment of a claim to a distributive share of his estate in custodia legis. * * *"

In Federal Housing Adm'r v. Moore, 9 Cir., 1937, 90 F.2d 32, at page 34, the court said:

"Appellant (F. H. Adm'r) was never a creditor of the bankrupt and has no claim against the bankrupt estate except that which the bank assigned to him after the adjudication in bankruptcy. With respect to that claim, appellant has, of course, only such rights as his assignor had. * * * appellant's assignor had no right of priority."

The court in In re Stanbrough, D.C.S.D. Iowa 1938, 23 F.Supp. 976, at page 977, in holding that the United States did not have priority under 31 U.S.C.A. § 191, R.S. § 3466, said:

"However, at the time of the filing of the petition by each debtor he was not indebted to the United States on any of the claims now filed for allowance in the estate as the assignments of the debt, as shown by the exhibits attached to the claim filed by the administrator for the United States, were subsequent to the date of the filing of the petition, and in the Stanbrough case the debt was not acquired by the Government until after the composition offered by the debtor had been approved by the referee."

In re Stamford Auto Supply Co., D.C.N. D.Tex.1938, 25 F.Supp. 530, at page 531, states:

"While every intendment should doubtless be indulged in favor of upholding the statute giving the United States a priority, it is our opinion that the *statute refers only to debts which the government owns at the time that the insolvency or bankruptcy is determined, and not to those subsequently acquired. * * *"* (Emphasis added.)

And in In re Wissmeier, D.C.E.D.N.Y.1939, 26 F.Supp. 806, at page 807, appears the following:

"Thus at the time of the bankruptcy the bankrupt was indebted not to the Government but to those who held the notes of the bankrupt. *Priorities must be measured as at that time.* With this rule in mind it must follow that since the creditors at that time—i. e. the Bank and the Johns Manville Company —had no right to priority, their assignee can be in no better position. * * *" (Emphasis added.)

II

The courts have concluded that debts assigned to the United States after the filing of a petition in bankruptcy are not entitled to priority. An assignment for the benefit of creditors has an effect similar to an act of bankruptcy. Therefore claims

assigned to the United States after an assignment for the benefit of creditors are not entitled to priority under R.S. § 3466.

■ Claims assigned before bankruptcy to United States, or an agency standing in its place and endowed with its right to priority, have been allowed priority. Wagner v. McDonald, 8 Cir., 1938, 96 F.2d 273; Korman v. Federal Housing Adm'r, 1940, 72 App.D.C. 245, 113 F.2d 743; In re Riggs, D.C.E.D.Pa., 51 F.Supp. 961; In re Weil, D.C.M.D.Pa., 39 F.Supp. 618.[3]

■ Claims assigned to United States or like agency thereof, before appointment of a receiver, have priority. United States v. Emory, 1941, 314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315.

■ But claims assigned to United States or like agency thereof, after filing of a petition in bankruptcy, have no priority. United States v. Marxen, 1939, 307 U.S. 200, at page 207, 59 S.Ct. 811, 83 L.Ed. 1222, affirming In re Monterey Brewing Co., D.C.S.D.Cal.1938, 24 F.Supp. 463; Federal Housing Adm'r v. Moore, 9 Cir., 1937, 90 F.2d 32; In re Stamford Auto Supply Co., D.C.N.D.Tex.1938, 25 F.Supp. 530; In re Miller, 2 Cir., 1939, 105 F.2d 926, affirming In re Miller, D.C.S.D.N.Y.1938, 25 F.Supp. 336; In re Hansen Bakeries, 3 Cir., 1939, 103 F.2d 665.

Com. of Massachusetts v. United States, 1948, 333 U.S. 611, 68 S.Ct. 747, 92 L.Ed. 968, is admittedly not an authority, but it indicates the reasoning of the Supreme Court in situations involving an assignment for the benefit of creditors. Here the debtor made a common-law assignment for the benefit of creditors, and the assignee realized $1,135.11 from the sale of the assets. The United States claimed taxes under Title 9 of $963.08; taxes under Title 8 of $690.05; capital stock taxes $21. The Commonwealth of Massachusetts claimed $803.72 unemployment taxes. The United States claimed priority by virtue of Revised Statutes, Section 3466. The District Court granted full priority for the capital stock and the Title 8 taxes, but allowed only a 10% priority for the Title 9 claim. The Circuit Court reversed and granted United States full priority. The Supreme Court affirmed.[4]

3. In the following cases the facts do not show whether the assignment occurred before or after bankruptcy. In re T. N. Wilson, Inc., D.C.S.D.N.Y.1938, 24 F. Supp. 651, granted priority to the Federal Housing Administrator on a claim assigned from a bank. The court based its decision on the fact that the claim of the Federal Housing Administrator arose from the expenditure of public funds. In re Wilson, D.C.N.D.Tex.1938, 23 F.Supp. 236, allowed priority.

4. In referring to its rulings in People of State of Illinois ex rel. Gordon v. United States, 328 U.S. 8, 66 S.Ct. 841, 90 L. Ed. 1049, and the companion case, People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348, the court in Com. of Massachusetts v. United States, supra, said 333 U.S. at 617, 68 S.Ct. at page 751:

"* * * The decision was broadly that by intervention of the insolvency and the consequent bringing of Rev.Stat. § 3466 into play, the taxpayer's right to pay the state and take federal credit had been cut off.8"

The court's footnote (8) then reads: "* * *. The federal priority under § 3466 attaches from the time the insolvent debtor transfers or loses control over his property. [People of State of Illinois [ex rel. Gordon] v. Campbell, 329 U.S. 362, 370, 67 S.Ct. 340, 345 [91 L.Ed. 348]; United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 355–358, 65 S.Ct. 304, 305–307, 89 L.Ed. 294; United States v. Oklahoma, 261 U.S. 253, 260, 43 S.Ct. 295, 297, 67 L.Ed. 638."

At page 625 of 333 U.S. at page 755 of 68 S.Ct.:

"* * *. In the first place, the effect of § 3466 depends on the fact of insolvency, not on the degree of it as the first concession seems to contemplate. * * *

"[Rev.Stat.] Section 3468 gives priority explicitly for 'debts due to the United States' and the priority given is in terms absolute, not conditional. Once attaching, it is final conclusive. * * *"

At pages 626 and 627 of 333 U.S., at page 756 of 68 S.Ct.:

"* * *. Prior decisions also have held that the priority attaches as of the time of the insolvency, a ruling also applied in the Illinois cases. * * * And it is at least doubtful on the statute's wording that obligations wholly contingent for ultimate maturity and obligation upon the happening of events after insolvency

936

Congress, in enacting R.S. § 3466, has expressly mentioned a "voluntary assignment" as one of the types of cases in which priority attaches to a claim of the United States. This statute contemplates four situations:

(1) Where the estate of a deceased debtor in the hands of his executor or administrator is insufficient to pay his debts;

(2) Where a debtor, having insufficient property to pay his debts, makes a voluntary assignment of his property for the benefit of creditors;

(3) Where the estate or property of an absconding, concealed or absent debtor is attached by process of law, and

(4) Where the debtor has committed an act of bankruptcy.

Of the four situations mentioned, only the fourth, namely, where the debtor has committed an act of bankruptcy, rests upon federal law or statutes.

■ Congress, by R.S. § 3466, has given legal effect to an assignment for the benefit of creditors and it probably makes little

difference whether the assignment is a common-law assignment or an assignment by virtue of state statute. Congress has said that this assignment for the benefit of creditors is a legal instrumentality which gives to an existing claim of the Government, the status of priority. Congress having made the assignment for the benefit of creditors, obviously a creature of state law, one of the means by which priority of a Government claim is created, it is only logical that the same assignment should be equally effective for other purposes, and particularly effective for the purpose of transferring legal title to the property of the debtor to the assignee for the benefit of creditors.

In Brainard v. Fitzgerald, 1935, 3 Cal.2d 157, at page 163, 44 P.2d 336, at page 339, Chief Justice Waste, in discussing the common-law assignment involved in that action, said:

"* * * It is supported by a consideration (the indebtedness to the creditors), and vested title in the assignee as trustee for all the creditors. Jarvis v. Webber, supra [196 Cal. 86, 236 P.

---

can be said to fall within the reach of 'debts due' as of the time of insolvency.26"

Footnote (26) reads, in part, as follows:

"* * *. And there is apparently no decision expressly ruling the matters of contingency of the obligation or of the priority upon subsequent events not certain. Cf. United States v. Marxen, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222. But the fact that the problem has not squarely arisen in the long history of § 3466 and that all of the decisions sustaining the priority were for debts clearly due and owing, adds force to the clear inferences implicit in the statute's wording, viz., *that Congress not only created a conclusive priority attaching as of the time of insolvency but in doing so drew the line for its operation close to, if not at, the commonly accepted meaning of 'debt' as distinguished from other forms of obligation*." (Emphasis added.)

At page 634 of 333 U.S., at page 760 of 68 S.Ct.:

"Nor are we persuaded that our former decisions were erroneous. For the strict policy of § 3466 had permitted few exceptions 38 and, as we repeated in [Peo-

ple of State of] Illinois [ex rel. Gordon] v. United States, quoting United States v. Emory, 314 U.S. 423, 433, 62 S.Ct. 317, 322, 86 L.Ed. 315, 'only the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of § 3466.' 328 U.S. 8, 12, 66 S.Ct. 841."

Footnote 38 referred to therein reads, in part:

"The original departures indeed did not contemplate that exceptions were being made. They conceived that the funds or property affected, being covered by mortgage, belonged in fact to third persons, not to the insolvent debtor. Thelusson v. Smith, 2 Wheat. 396, 426, 4 L. Ed. 271; Conard v. Atlantic Ins. Co., 1 Pet. 386, 7 L.Ed. 189; Brent v. Bank of Washington, 10 Pet. 596, 611, 9 L.Ed. 547; see Savings, Society v. Multnomah County, 169 U.S. 421, 428, 18 S.Ct. 392, 395, 42 L.Ed. 803; cf. United States v. Fisher, 2 Cranch 358, 2 L.Ed. 304; United States v. Hooe, 3 Cranch 73, 2 L.Ed. 370. The Court has been loath to expand these exceptions, cf. [People of State of] Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 370, 67 S.Ct. 340, 345 [91 L.Ed. 348], to include other types of lien. * * *"

138]. The transfer having been made for the benefit of creditors, their acceptance is presumed until the contrary is shown. Forbes v. Scannell, 13 Cal. 242, 243, 288; Bump on Fraudulent Conveyances (2d Ed.) 327. While the nonacceptance of any particular creditor may result in postponing him to other creditors, it is not fatal to the assignment (Bump, supra), for preferences are not illegal under our law. Section 3451, Civ.Code. This being so, the assignment prevails over a subsequent attachment or execution. Bump, supra. In other words, a nonconsenting creditor cannot prefer himself over those who abide by the transfer. The assignment herein having been made in good faith, the property right passed out of the copartnership debtor, and thereafter no legal title existed in it on which the attachment could have fastened."

And then, the Chief Justice, in the final paragraph of the decision, added:

"* * * In the absence of any conflict with or violation of our statutory law, we are not inclined to interfere with the practice developed by local boards of trade of procuring assignments, executed in good faith, for the benefit of creditors generally. Experience has shown that this practice has much to commend it."

Thus, in California an assignment for the benefit of creditors, made in good faith, passes the property right from the assignor to the assignee and no legal title remains in the assignor.

In the case at bar, the assignor, Peters, having on August 14, 1951, made an assignment in good faith to plaintiff Engleman, for the benefit of Peters' creditors, no legal title remained in Peters and the assignment by the creditor Smith to the defendant Commodity Credit Corporation, made thereafter on January 11, 1952, gave the defendant no priority under Rev.Stat. § 3466, 31 U.S.C.A. § 191.