## Beckwith Machinery Company v. Atlantic Seaboard Coal Company

*F. Cortez Bell,* of *Bell, Silberblatt & Swope,* for wage claimants.

*Bernard J. Brown, Deputy Attorney General,* for United States.

CAMPBELL, P. J., April 30, 1965.—On January 9, 1963, a receiver was appointed for the Atlantic Seaboard Coal Company as a result of an equity action

instituted by a creditor, Beckwith Machinery Company. Receiver entered upon his duties, liquidated assets of the debtor, and filed his first and final account on January 4, 1965. Said account, after deductions for administration expenses, showed a balance for distribution among creditors of $5232.92.

Two creditors claim a priority in the distribution. The claim of each is sufficiently large to consume the entire amount for distribution.

First claimant consists of a group of wage claims totaling $5,996.08. The record does not indicate the time period in which said wages were earned, but it is admitted that the claims have never been reduced to judgment nor were the assets of the Atlantic Seaboard Coal Company levied upon or attached in any way to secure the wage claims at the time of the appointment of the receiver.

Second creditor asserting priority is the United States Government, whose claim is for unpaid withholding and employment taxes for the first and second quarters of 1962 in the amount of $8,008.81. Assessments for the taxes due were made on September 12, and October 23, respectively, and liens were duly filed in the prothonotary's office on September 18, and October 31, 1962.

The factual situation presents a clear-cut issue as to which of the two claimants has top priority on the funds for distribution.

Wage claimants claim priority under the insolvency and assignments statutes of the Commonwealth which provide as follows:

"All moneys that may be due . . . for labor . . . by any miner, . . . or any other kind of laborer, . . . from any . . . chartered company, . . . for any period not exceeding six months . . . preceding the sale or transfer of the real or personal property . . . shall be a lien upon said real or personal property . . . and

shall be preferred and first paid out of the proceeds of the sale of such real and personal property . . . Provided however, that the claim thus preferred shall not exceed two hundred dollars": Act of April 9, 1872, P. L. 47, sec. 1, as amended, 43 PS §221.

"Any lien or claim for wages, for rent, of mechanics or material men or otherwise, which by virtue of any act of Assembly would be preferred in case of an execution, shall retain its preference in case of an assignment, and to the same extent": Act of June 4, 1901, P. L. 404, sec. 31, as amended, 39 PS §95.

No real estate is involved in this proceeding.

The United States of America claims first priority in the distribution of the balance of the fund on the basis of the following Federal statutes:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs which may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person": c. 736, 68A Stat. 779, 26 U. S. C. A. §6321.

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time": 68A Stat. 779, 26 U. S. C. A. §6322.

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient

property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed": R. S. §3466.31 U. S. C. A. §191.

The priority act of the Commonwealth, 43 PS §221, does not create a lien in the true sense, but merely a priority in distribution of proceeds of sale: Miners Savings Bank of Pittston, Pa. v. Joyce, 97 F. 2d 973.

The claim of the United States was perfected on the date of the assessment and thus became a specific choate lien on all the property of the debtor at the time of assessment and the lien was binding in this case at the time of the appointment of the receiver: United States v. City of New Britain, 347 U. S. 81 (1954); Ersa, Inc. v. Dudley, 234 F. 2d 178 (1956).

At the time of the appointment of receiver on January 9, 1963, the United States had the only valid lien on the personal assets of debtor. Even if we assume that the State statute created a lien, it would be subsequent in time to the lien of the United States, thus giving the Federal lien priority.

A lien which is first in time is first in right and is entitled to prior satisfaction out of the property it binds: Ersa, Inc. v. Dudley, 234 F. 2d. 178 (1956).

The priority given to the United States by section 3466 of the Revised Statutes, 31 U. S. C. A. §191, in the distribution of an insolvent's estate is not defeated by a general, inchoate lien, created by State or local law, which has not been perfected by levy or seizure or some other similar act of possession prior to the appointment of a receiver: Dickson v. Monarch Anthracite Mining Co., 45 Lack. Jur. 201.

Whether wage claimants had a statutory priority or a lien or not is of no moment. In either event the claim of the United States must prevail.

Insolvency is an admitted fact. The appointment of

a receiver for an insolvent debtor constitutes an act of bankruptcy: 66 Stat. 421, 11 U. S. C. A. §21(a) (5).

The Federal priority statute, 31 U. S. C. A. §191, is applicable to a nonbankruptcy case. It applies in an equity receivership involving insolvency even though no bankruptcy results: United States v. Emory, 314 U. S. 423 (1941).

Those who seek to defeat the priority of the United States have the burden of showing that the act is inapplicable: Bramwell v. United States Fidelity and Guaranty Company, 269 U. S. 483.

Taxes are debts due to the United States within the Federal statute providing for priority of payment, 31 U. S. C. A. §191; Illinois ex rel. Gordon v. United States, 328 U. S. 8 (1946).

Federal tax claims are entitled to priority over wage claims given priority by State statutes: United States v. Emory, 314 U. S. 423 (1941); United States v. Division of Labor Law Enforcement, California, 201 F. 2d 857 (C. A. 9th Circuit, 1953).

The priority referred to in section 191 is "priority over all creditors; that is, private persons and other public bodies": United States v. National Surety Company, 254 U. S. 73 (1920).

A sister court, in this Commonwealth, surcharged a receiver who paid wage claims leaving insufficient funds to pay tax claims of the United States: In re Account of W. H. Hughes, Receiver of Forks Coal Mining Co., 21 Cambria 217 (1961).

The District Court of the United States for the Western District of Pennsylvania in the case of Charles E. Teale v. Pine Run Coal Co., 40-2 U. S. T. C. 9569 (1940), in a strikingly similar factual situation upheld a tax claim of the United States in preference to wage claims in a nonbankruptcy case.

We are convinced by the above citations that the proposed distribution of the receiver awarding funds

in his possession to the wage claimants is incorrect. The exceptions of the United States Government must be sustained.

And now, to wit, April 30, 1965, exceptions filed on behalf of United States Government are sustained, the proposed distribution of receiver is refused, receiver is directed to pay the costs of the instant proceedings from the funds in his possession, and the balance remaining is awarded and directed paid to United States Government on account of its claims for withholding and employment taxes.

And now, to wit, April 30, 1965, an exception is noted and bill sealed for wage claimants.