**KORMAN v. FEDERAL HOUSING ADMINISTRATOR.**

**No. 7427.**

United States Court of Appeals for the District of Columbia.

Decided June 3, 1940.

Jacob Sandler, of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., and Grace Stiles, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

This is an appeal from a judgment of the District Court confirming an order of a referee in bankruptcy granting preferred status to a claim held by the Federal Housing Administration.

It appears that the debtor secured a loan from the Riggs National Bank of this city on or about March 19, 1936. The loan was insured by the Federal Housing Administration. Subsequently, the debtor

744

defaulted in his payments and on July 7, 1937, the Federal Housing Administration paid Riggs National the balance due on the note, receiving at that time an assignment of the same "to the Federal Housing Administrator acting on behalf of the United States of America". On August 4, 1937, the debtor filed a petition in bankruptcy in the District Court and was thereafter adjudicated a bankrupt. In the name of the United States, the Administrator filed a claim on the note for which he sought the priority accorded "debts due to the United States" under R.S. § 3466.[1] The referee in bankruptcy and the District Court were both of the opinion that the claim was entitled to priority. From the order of the District Court so ruling this appeal was taken.

■ In United States v. Marxen, 307 U.S. 200, 59 S.Ct. 811, 815, 83 L.Ed. 1222, the Supreme Court held that where assignment of the claim was made *after* the petition in bankruptcy had been filed, the Federal Housing Administration can assert only the right of its assignor, "for the reason that the rights of creditors are fixed by the Bankruptcy Act as of the filing of the petition in bankruptcy". Had the assignment of the note in the instant case taken place *after* the bankruptcy petition was filed, the rule of the Marxen case would foreclose the issue. It is clear from

the record, however, that the debtor's negotiable note was irrevocably assigned to the Administrator *prior* to the filing of the petition. Thus the question presented here is whether the claim held by the Federal Housing Administration, at the time the petition was filed, is a "debt due to the United States" within the meaning of R.S. § 3466. In accord with the decision of the Eighth Circuit Court of Appeals in Wagner v. McDonald, 96 F.2d 273, we are of the opinion that the question must be answered in the affirmative.[2]

It is first contended by the appellant that a note assigned by a private creditor to the United States is not a "debt due to the United States" within the meaning of R. S. § 3466. Underlying this contention is the theory that, even in respect to assignments made prior to institution of bankruptcy proceedings, no assignee can acquire a greater right than that possessed by his assignor. However true that may be of assignments between private persons and institutions,[3] Congress has enacted a different rule governing assignments to the United States. Without qualification, R.S. § 3466 prescribes priority for "the debts due to the United States". In this broad language there is nothing to warrant distinction between original and assigned credits, and there is nothing in the Bankruptcy Act or other acts of Congress sug-

[1] Section 64, sub. b (7) of the Bankruptcy Act provides in part as follows:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * *

"(5) debts owing to any person, including the United States, who by the laws of the United States is entitled to priority." 52 Stat. 874, 11 U.S.C.A. 104, sub. a (5).

Section 3466 of the Rev.Stat. provides as follows:

"Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." 31 U. S.C.A. § 191.

[2] To the same effect see: In re Dickson's Estate, 197 Wash. 145, 84 P.2d

661. In re Wilson, D.C., 23 F.Supp. 236, 238 (not clear whether assignment made prior to or after filing of the petition in bankruptcy); In re T. N. Wilson, Inc., D.C., 24 F.Supp. 651 (same). See also In re Hansen Bakeries, 3 Cir., 103 F. 2d 665, 666. All reported cases wherein the Federal Housing Administration has been denied priority for its claim have involved assignments made to it after the filing of the petition in bankruptcy. See United States v. Marxen, 307 U.S. 200, 207, note 19, 59 S.Ct. 811, 815, 83 L.Ed. 1222; for a review of the cases. The decision relied on by the appellant, Federal Housing Administrator v. Moore, 9 Cir., 90 F.2d 32 is one of those involving a subsequent assignment and hence no authority in the instant case. The court in the Moore case apparently predicated its decision on the fact that the United States was not a party to the action as well as the fact that the assignment was made to the Administrator after the filing of the petition in bankruptcy.

[3] cf. Shropshire, Woodliff & Co. v. Bush, 204 U.S. 186, 27 S.Ct. 178, 51 L. Ed. 436.

gesting such a distinction. It has been uniformly held that a note assigned to the United States by a private institution is a debt due to the United States within the meaning of this section.[4] This claim on the note assigned to the Administrator, prior to the institution of bankruptcy proceedings, must therefore be accorded priority under R.S. § 3466, if a debt due to the Federal Housing Administration, acting on behalf of the United States, is to be regarded as a debt due to the United States.

We come then to appellant's second contention that this debt is not to be so regarded. In the very recent case of United States v. Summerlin, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283, decided May 27, 1940, the Supreme Court unanimously held that a claim assigned to the Federal Housing Administrator acting on behalf of the United States was not subject to a state limitation statute for the reason that it was "the claim of the United States". Although this might seem decisive of the instant case, it appears from earlier decisions of the Court that additional considerations may be involved in determining whether the claim of a governmental agency is entitled to priority under R.S. § 3466.[5] It is that question which is here presented.

The Federal Housing Administration is an administrative agency authorized by Act of Congress[6] and brought into existence by Presidential order.[7] Directing its activities is an Administrator appointed by the President with the advice and consent of the Senate.[8] Broadly, its function is the insurance of certain classes of credits extended in connection with improvements and purchase of real estate.[9] Working capital and operating expenses are supplied by the United States.[10] It is obvious that the Federal Housing Administration is an agency of the United States and its claims are therefore entitled to governmental priority in bankruptcy proceedings, unless there has been some affirmative indication by Congress to the contrary.[11]

It is significant to note that the Supreme Court has found such Congressional intent in but two classes of cases. It has appeared in some of the cases that according debts due to the United States priority would conflict with an *expressed* Congressional policy. Thus priority was refused "to the Director General of Railroads because section 10 of the Federal Control Act manifested an intention that the carriers under federal control should be treated as before their transfer to federal operation.[12] The United States itself when it sought priority for its loans under the Transportation Act was denied the benefits of Section 3466 because the intention to build up the credit standing of the railroads was inconsistent with the claimed priority."[13] So, in United States v. Marxen, supra, a claim acquired by the United States from a private institution *after* the debtor filed a petition in bankruptcy was denied priority because "the rights of creditors are fixed by the Bankruptcy Act as of the filing of the petition". In the instant case, however, according the claim of the Federal Housing Administration priority, far from contravening

---

[4] Howe v. Sheppard, 12 Fed.Cas. page 672, Case No. 6,772, Story, J. as Circuit Judge; United States v. Fisher, 6 U.S. 358, 2 Cranch 358, 2 L.Ed. 304; Wagner v. McDonald, 8 Cir., 96 F.2d 273. See Lewis v. United States, 92 U.S. 618, 621, 23 L.Ed 513. See also cases cited supra note 3.

[5] Compare DuPont De Nemours & Co. v. Davis, Director General of Railroads, 264 U.S. 456, 44 S.Ct. 364, 68 L.Ed. 788 (statute of limitations may not be asserted against the Director General) with Mellon, Director General v. Michigan Trust Co., 271 U.S. 236, 46 S.Ct. 511, 70 L.Ed.· 924 (claim presented in receivership proceedings by the Director General not entitled to priority under R.S. § 3466).

[6] 48 Stat. 1246, 12 U.S.C.A. § 1701 et seq.

[7] See Executive Order No. 7058, May 29, 1935, 12 U.S.C.A. § 1702 note.

[8] 48 Stat. 1246, 12 U.S.C.A. § 1702.

[9] 48 Stat. 1246, as amended, 12 U.S. C.A. § 1703(b); 48 Stat. 1248, as amended, 12 U.S.C.A. § 1709; 52 Stat. 16, as amended, 12 U.S.C.A. § 1713.

[10] 48 Stat. 1247, 12 U.S.C.A. § 1705; 48 Stat. 1248, 12 U.S.C.A. § 1708.

[11] Mellon v. Michigan Trust Co., 271 U.S. 236, 239, 46 S.Ct. 511, 70 L.Ed. 924; DuPont De Nemours v. Davis, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788.

[12] Mellon v. Michigan Trust Co., supra, note 11.

[13] United States v. Guaranty Trust Co., 280 U.S. 478, 485, 486, 50 S.Ct. 212, 74 L.Ed. 556. The quotation is from United States v. Marxen, 307 U.S. 200, 206, 207, 59 S.Ct. 811, 814, 83 L.Ed. 1222.

an expressed policy of Congress, would seem to further the objectives of the National Housing Act.

The second class of case wherein the Supreme Court has found evidence of Congressional intent that debts due an agency of the United States are not to be accorded governmental priority involved agencies with a separate corporate personality.[14]

 With no suspicion of a corporate identity, as constituted by Congress, the Federal Housing Administration is merely an administrative unit of government. However, the appellant argues that provision for suit by and against the Administrator in his official capacity indicates Congressional intention that the Federal Housing Administration is to be regarded as a separate legal entity whose claims are not to be accorded governmental priority.

Congress has *expressly* provided by this language *only* that the immunity of the sovereign to suit should not be asserted in respect to the administration of the Federal Housing Administration.[15] As a matter of convenience, the Administrator was authorized to appear in his official capacity as the champion of its rights. In this there is no express waiver of other legal prerogatives of the sovereign[16] and it is not always sound to assume that Congress intended to do that which it did not.[17]

 We are of the opinion that provision for suit by and against the Administrator in his official capacity does not indicate Congressional intention to withdraw claims of this agency from the protection of R.S. § 3466. For this view we find support not only in the limited nature of the provision itself and the Committee Report concerning it,[18] but, as well, in decisions of the Supreme Court recognizing that the sovereign may appear in court

---

[14] Sloan Shipyards Corp. v. United States Fleet Corporation, 258 U.S. 549, 570, 42 S.Ct. 386, 66 L.Ed. 762; Continental Illinois National Bank & Tr. Co. v. Chicago Rock Island & Pacific Ry. Co., 294 U.S. 648, 684, 55 S.Ct. 595, 79 L.Ed. 1110 (semble). But cf. Inland Waterways Corp. v. Young, Recr., 60 S.Ct. 646, 84 L.Ed. 901, decided March 25, 1940.

[15] "* * * because certain financial institutions hesitated to make insured loans, lest there might be defaults which could not be prosecuted because they were claims against the United States, the Congress amended the act, section 1, August 23, 1935, 12 U.S.C.A. § 1702, so as to permit the Administrator, in his official capacity, to sue and be sued in any court of competent jurisdiction, state or federal. Also it was doubted whether the Administrator, since he was acting for the United States, had power to dispose of property assigned to him in connection with the payment of insurance, or whether he had power to collect and compromise obligations assigned to him in such connection. Thereupon, in section 2, of the act of April 3, 1936, 12 U.S. C.A. § 1703 [sic], he was given powers, 'until such time as such obligations may be referred to the Attorney General for suit or collection.'" In re Wilson, D. C., 23 F.Supp. 236, 240.

[16] Had Congress intended to divorce claims of the Federal Housing Administration from all the legal prerogatives of the sovereign it could have done so without difficulty. For example, in Mellon v. Michigan Trust Co., 271 U.S. 236, 46 S. Ct. 511, 70 L.Ed. 924, whether a claim for freight, presented in a receivership proceeding by the Director General of the Railroads, was entitled to priority under R.S. § 3466 depended on the interpretation to be given § 10 of the Federal Control Act, 40 Stat. 451, 456, which provided in part as follows: "That carriers while under Federal control shall be subject to all laws and liabilities as common carriers * * *. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; *and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government.*" (Italics supplied.)

[17] "* * * it [the United States] may not be held to have waived any sovereign right or privilege unless plainly so provided." DuPont De Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68 L.Ed. 788.

[18] Authority to sue and be sued in his official capacity was conferred on the Administrator by an amendment to the National Housing Act which the Committee Report stated: "makes several minor clarifying amendments to the provisions of the National Housing Act relating to suits brought under such act * * *." Sen. Rep. 1007 on H. R. 7617, 74th Cong. 1st Sess.

and assert its prerogatives through a governmental agent acting in his official capacity.[19]

We conclude that the claim filed by the Administrator in behalf of the United States, is entitled to the priority accorded debts due to the United States. The order of the District Court must, therefore, be affirmed.

Affirmed.

---

[19] Inland Waterways Corporation v. Young, Recr., 60 S.Ct. 646, 650, 84 L. Ed. 901, decided March 25, 1940 (a corporation with power expressly given to sue and be sued, 43 Stat. 362, 49 U.S.C. A. § 155—"So far as the powers of a national bank to pledge its assets are concerned, the form which Government takes * * * is wholly immaterial"); Du-Pont De Nemours & Co. v. Davis, 264 U. S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788; Clallam County, Wash., v. United States and United States Spruce Production Corp., 263 U.S. 341, 345, 44 S.Ct. 121, 68 L.Ed. 328. See Mellon v. Michigan Trust Co., 271 U.S. 236, 46 S.Ct. 511, 70 L.Ed. 924.