## In re RIGGS.

### No. 21858.

District Court, E. D. Pennsylvania.

Sept. 30, 1943.

Martin Feldman, of Philadelphia, Pa., for trustee in bankruptcy.

Gerald A. Gleeson, U. S. Atty., and Walter A. Gay, Jr., Asst. U. S. Atty., both of Philadelphia, Pa., for claimant Federal Housing Administrator.

KALODNER, District Judge.

This is a petition by the trustee in bankruptcy to review the referee's order allowing priority to the claim of the United States. The facts are not in dispute.

On October 20, 1934, the bankrupt Riggs borrowed $2,000 from the Fidelity-Philadelphia Trust Company on a judgment note. The loan was guaranteed by the Federal Housing Administration. The borrower having defaulted, judgment was entered against him in favor of the Bank in the Court of Common Pleas of Philadelphia County. On September 10, 1936, the Bank was paid and the judgment was assigned to the Federal Housing Administration. The bankrupt was adjudicated on September 12, 1941, upon his voluntary petition. The United States of America thereupon filed a proof of claim for $1,447.18 principal and $470 interest, with further interest on principal at the rate of six (6%) percent from November 1, 1941.

The referee allowed the claim priority over the objection of the trustee. Is the claim of the United States, acting for the Federal Housing Administrator, entitled to priority?

The trustee asserts that the claim is not entitled to priority by virtue of the National Housing Act, Sections 1 to 6, 12 U. S.C.A. §§ 1702–1706a, since this Act indicates that the Federal Housing Administration was created to aid private business and not to perform any essential functions of government, and that it sets up an entity separate and distinct from the Government. He contends that the purposes of the Federal Housing Administration are similar to the purposes and functions of the Reconstruction Finance Corporation and Home Owners Loan Corporation, and that the legislation creating these bodies does not give any special treatment in bankruptcy or insolvency, nor is the claim entitled to priority by virtue of sovereign prerogative, since the claim does not arise by virtue of a statute that seeks to raise revenue—in other words, it is not a debt due the United States of America.

The Government bases its right to priority on Section 3466 of the Revised Statutes, 31 U.S.C.A. § 191, and Section 64, subs. a, b, of the Bankruptcy Act as amended, 11 U.S.C.A. § 104, subs. a, b.

These acts confer priority upon "debts owing to any person who by the laws of * * * the United States is entitled to priority: Provided, That the term 'person' * * * shall include * * * the United States". Further, it is provided that "Whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied; and the priority established shall extend * * * to cases in which an act of bankruptcy is committed."

In United States v. Emory, 314 U.S. 423, at page 425, 62 S.Ct. 317, at page 319, 86 L.Ed. 315 in considering the applicability of Section 3466 of the Revised Statutes to claims arising under the National Housing Act, the Supreme Court said:

"* * * The applicability of § 3466 to this case is clear. The section applies in terms to cases '(1) in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or (2) in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law,

* * * (or) (3) in which an act of bankruptcy is committed.' This case falls within the third category. It is agreed that the St. James Distillery was insolvent 'on or before August 1936' and that in response to a creditor's petition a receiver was appointed to liquidate the corporate assets. The appointment of a receiver under such circumstances is among the most common examples of an 'act of bankruptcy'. Cf. § 3, sub. a(4) of the Bankruptcy Act, U.S.C., Title 11, § 21(a) (4), 11 U.S.C.A. § 21, sub. a(4).

"Just such proceedings as this, therefore, are governed by the plain command of § 3466 that 'debts due to the United States shall be first satisfied.' The purpose of this section is 'to secure an adequate public revenue to sustain the public burden' (United States v. State Bank of North Carolina, 6 Pet. 29, 35, 8 L.Ed. 308), and it is to be construed liberally in order to effectuate that purpose. Bramwell v. United States Fidelity & Guaranty Co., 269 U.S. 483, 487, 46 S.Ct. 176, 70 L.Ed. 368. In view of this language, purpose, and rule of construction, the priority asserted here by the United States appears to be securely established. * * * "

In discussing the issue of priority the Court said (314 U.S. at page 429, 62 S.Ct. at page 321, 86 L.Ed. 315):

" * * * While the point was not discussed in the courts below, it is now urged that the objectives and provisions of the National Housing Act require us to hold that claims of the United States arising under it are not entitled to the priority awarded by § 3466. We are aware of no canon of statutory construction compelling us to hold that the word 'first' in a 150 year old statute means 'second' or 'third', unless Congress later has said so or implied it unmistakably.

"Certainly, there is no provision in the National Housing Act expressly relinquishing the priority of the United States with respect to claims arising under it. At best, therefore, such an intention on the part of Congress must be found in some. patent inconsistency between the purposes of the Housing Act and § 3466. The plain objective of the Housing Act was to stimulate the building trades and to increase employment. In order to induce banks and other lending institutions to get the program under way, Congress promised that the United States would make good up to 20% on the losses they might incur on such loans. As between the government and the lending institutions, it was clearly intended that the United States should bear the losses resulting from defaults. But beyond this we may not go. There is nothing to show a further intention that the United States should relinquish its priority as to claims against defaulting and insolvent borrowers whose notes it takes up from the lending institution pursuant to the insurance contract. That is, the ultimate collection of bad loans was consigned to the United States rather than to the lending institutions, but the collecting power of the United States was neither abridged nor qualified. * * * "

While in the foregoing case the question arose in the distribution of funds in a State Court insolvency proceeding in which a receiver was appointed, a fortiori, the same principle would apply in a bankruptcy proceeding.

Collier on Bankruptcy, 14th Ed., vol. 3, p. 2180, sets forth the principle as follows: "Recent years have witnessed the entrance of the Federal Government into many new activities and the employment by the United States of diverse forms of organization to perform newly acquired functions. When one of these organizations presents a claim against an insolvent debtor, either in bankruptcy or receivership, an interesting question is raised. To what extent may such an instrumentality claim 'as the United States' under 31 U.S.C. paragraph 191 [31 U.S.C.A. § 191]? If the claimant is what may be loosely termed an administrative agency rather than a corporation, the stock of which is held by the Government, there seems to be now no doubt that it must be allowed the priority accorded to the United States."

This question was considered by the United States Circuit Court of Appeals for this Circuit in the case of Hansen Bakeries, Inc., 3 Cir., 103 F.2d 665, at page 666, where the Court said: " * * * It is clear that priority is not affected by the fact that the debt was due to the Federal Housing Administrator and not directly to the United States since the Administrator was. acting in his official capacity as an agent of the Federal Government. Under these circumstances a debt due to him is due to the United States. Wagner v. McDonald, 8 Cir., 96 F.2d 273. It follows, as was held in the case just cited, that a debt due to the Federal Housing Adminis-

trator by a bankrupt at the time his petition in bankruptcy is filed is entitled pursuant to Section 64, sub. b, of the Bankruptcy Act, 11 U.S.C. § 104(b), 11 U.S.C.A. § 104, sub. b, to priority of payment under Section 3466, Revised Statutes, 31 U.S.C. § 191, 31 U.S.C.A. § 191, which provides that 'Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority established shall extend * * * to cases in which an act of bankruptcy is committed.' "

See, also, In re Weil, D.C.M.D.Pa., 39 F. Supp. 618, and Korman v. Federal Housing Administrator, 72 App.D.C. 245, 113 F.2d 743. In the latter case the Court said (72 App.D.C. 245, 113 F.2d at page 745):

" * * * The Federal Housing Administration is an administrative agency authorized by Act of Congress and brought into existence by Presidential order. Directing its activities is an Administrator appointed by the President with the advice and consent of the Senate. Broadly, its function is the insurance of certain classes of credits extended in connection with improvements and purchase of real estate. Working capital and operating expenses are supplied by the United States. It is obvious that the Federal Housing Administration is an agency of the United States and its claims are therefore entitled to governmental priority in bankruptcy proceedings, unless there has been some affirmative indication by Congress to the contrary.

"It is significant to note that the Supreme Court has found such Congressional intent in but two classes of cases. It has appeared in some of the cases that according debts due to the United States priority would conflict with an expressed Congressional policy. Thus priority was refused 'to the Director General of Railroads because section 10 of the Federal Control Act [40 Stat. 456] manifested an intention that the carriers under federal control should be treated as before their transfer to federal operation. The United States itself when it sought priority for its loans under the Transportation Act was denied the benefits of Section 3466 because the intention to build up the credit standing of the railroads was inconsistent with the claimed priority.' So, in United States v. Marxen, supra, a claim acquired by the United

States from a private institution after the debtor filed a petition in bankruptcy was denied priority because 'the rights of creditors are fixed by the Bankruptcy Act as of the filing of the petition'. In the instant case, however, according the claim of the Federal Housing Administration priority, far from contravening an expressed policy of Congress, would seem to further the objectives of the National Housing Act."

It follows, therefore, that the order of the referee must be affirmed and the claim of the United States allowed priority.