**FEDERAL INSURANCE COMPANY,**
a corporation, Plaintiff,

v.

**Neal J. HARDY, Federal Housing Commissioner, Missouri Steel & Wire Company, a corporation, and Florence Branoweth, Statutory Trustee of The Royal Window and Awning Company, a corporation whose charter has been revoked, Defendants.**

**No. 60 C 237(1).**

United States District Court
E. D. Missouri, E. D.
July 9, 1963.

Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., for plaintiff.

Richard D. FitzGibbon, U. S. Atty., St. Louis, Mo., for defendant Hardy.

Dulin & King, St. Louis, Mo., for Mo. Steel & Wire Co. and Florence Branoweth.

HARPER, Chief Judge.

On July 14, 1960, plaintiff, the Federal Insurance Company, a corporation, filed its first amended petition in the Circuit Court of the City of St. Louis. It sought relief against defendant, Julian H. Zimmerman, Federal Housing Commissioner, in the amount of $1,345.20 with interest from and after demand and costs, or, in the alternative against defendant, Florence Branoweth, statutory trustee of the Royal Window & Awning Company, a corporation whose charter has been revoked, in the amount of $572.60 with interest from and after demand and costs, together with a special execution for said amounts to be satisfied out of the assets of said company in her hands, and against defendant, Missouri Steel & Wire Company, in the amount of $772.60 with interest from and after demand and costs.

On July 28, 1960, Julian H. Zimmerman filed a petition for removal to this court. The court later ordered the substitution of Neal J. Hardy as party defendant in place of Zimmerman.

On January 15, 1962, plaintiff was granted leave to amend its first amended petition by interlineation. Separate answer of defendant Hardy to plaintiff's first amended petition as amended by interlineation was filed September 6, 1962.

The case was tried before the court on January 9, 1963. On the same day co-defendants, Missouri Steel & Wire Company and Florence Branoweth, filed a motion to dismiss plaintiff's complaint at the close of the plaintiff's evidence. Ruling was reserved. At the close of the entire case, motion of the same defendants was made, submitted and sustained. The cause was thereby dismissed as to said co-defendants.

■ At the close of plaintiff's case a motion for a directed verdict was made by the defendant Hardy, upon which the court reserved ruling. Defendant Hardy did not offer any testimony and the case was taken as submitted on the record insofar as defendant Hardy was concerned. A motion for directed verdict (F.R. Civ.P., Rule 50) is not applicable in a non-jury trial. United States v. Lowenthal, 7 Cir., 248 F.2d 397. The proper motion in a non-jury trial of the type submitted is a motion to dismiss under Rule 41(b). The court will treat the motion of defendant Hardy as a motion to dismiss rather than for a directed verdict. O'Brien v. Westinghouse Electric Corporation, 3 Cir., 293 F.2d 1.

The facts disclose that persons who called themselves Robert Robinson and Verta Mae Robinson, his wife, applied for an FHA loan through the Royal Window & Awning Company, signing said application as "Robert Robinson and Verta Mae Robinson." The purpose of this loan was to have storm windows and doors installed at 1927 Belt Avenue, St. Louis, Missouri, at an estimated cost of $498.00. The Lindell Trust Company approved this application for an FHA loan, the amount of the loan being $572.-60, which included financing charges and was payable in installments of $15.91 per month for 36 months.

On April 30, 1957, Robert Robinson executed the Completion Certificate for the property improvement loan referred to above.

On April 30, 1957, Robert Robinson and Verta Mae Robinson executed a promissory note to the Royal Window & Awning Company for $572.60. The Royal Window & Awning Company, by Howard Becker, endorsed the note without recourse to the order of the Lindell Trust Company for a good and valuable consideration.

On or about April 30, 1957, the Federal Housing Administration, upon application which on its face stated that it was prepared by Robert Robinson and Verta Mae Robinson, and upon payment of premiums by Lindell Trust Company, insured the Lindell Trust Company against losses which it might sustain as a result

of the purchase of the note described above, pursuant to the provisions of Title I of the National Housing Act, as amended (12 U.S.C. § 1703 et seq.), and the administrative regulations promulgated thereunder.

Persons who called themselves Robert Robinson and Verta Mae Robinson, his wife, on July 1, 1957, applied for an FHA loan through the Missouri Steel & Wire Company, signing said application as "Robert Robinson and Verta Mae Robinson." The purpose of this loan was to have a fence installed at 1927 Belt, St. Louis, Missouri, at an estimated cost of $671.74.

The Lindell Trust Company approved this application for an FHA loan, the amount of the loan being $772.67, which included financing charges and was payable in installments of $21.47 per month for 36 months.

On July 17, 1937, Robert Robinson and Verta Mae Robinson executed the Completion Certificate for the property improvement loan just referred to.

On July 17, 1957, Robert Robinson and Verta Mae Robinson executed a promissory note to Missouri Steel & Wire Company for $772.67. Missouri Steel & Wire Company, by Jos. Monnig, endorsed the note without recourse to the order of Lindell Trust Company for a good and valuable consideration.

On or about July 5, 1957, the Federal Housing Administration, upon application which on its face stated that it was prepared by Robert Robinson and Verta Mae Robinson, and upon payment of premiums by Lindell Trust Company, insured the Lindell Trust Company against losses which it might sustain as a result of the purchase of the note just referred to, pursuant to the provisions of Title I of the National Housing Act, as amended (12 U.S.C. § 1703 et seq.), and the administrative regulations promulgated thereunder.

The promisors, Robert Robinson and Verta Mae Robinson, defaulted in the payment of the note numbered FHA 8585–111–3 on September 12, 1957, causing the balance then remaining, $524.87, to become due and payable by virtue of the acceleration clause contained in said note.

The promisors, Robert Robinson and Verta Mae Robinson, defaulted in the payment of the note numbered FHA 10053–116–5 on September 15, 1957, causing the balance then remaining, $751.20, to become due and payable by virtue of the acceleration clause contained in said note.

Payment has often been demanded by the Lindell Trust Company on notes FHA 8585–111–3 and FHA 10053–116–5. The makers of the notes, Robert Robinson and Verta Mae Robinson, have paid nothing and are still in default on these obligations.

Claim was filed with the Federal Housing Administration on the default of Note FHA 8585–111–3 in the amount of $524.87, and a claim was filed with the Federal Housing Administration on the default of Note FHA 10053–116–5 in the amount of $751.20.

The Federal Housing Administration, through Lester H. Thompson, Comptroller, on February 25, 1959, refused to honor the claim for loss on the two notes mentioned in the preceeding paragraph (Plaintiff's Exhibit No. 11). The denial was based on the following from that exhibit which reads in part:

"In these circumstances, it has been concluded that Verta Mae Morrison has disclosed she signed a fictitious name which actually was not her real name. Assuming that this admission is correct, the notes would not be genuine within the meaning of Section 201.2(a) of the Title I Regulations. Therefore, * * * the notes would not have been eligible for Title I financing at their inceptions."

Plaintiff, Federal Insurance Company, by virtue of an insurance policy entitled "Bankers' Blanket Bond and Policy," which was in force at the time of the giving of the notes and at the time of the default in the notes, made payment to the

Lindell Trust Company by check for $450.27 to cover the default in Note FHA 8585–111–3, and $671.14 to cover the default in Note FHA 10053–116–5. These payments were made pursuant to the plaintiff's coverage of the Lindell Trust Company under Section 4 of its insurance policy covering forgery and pursuant to Defendant Hardy's Exhibit A. The total loss, then, to the Federal Insurance Company by virtue of its blanket bond and policy which covered forgery, is $1,121.41.

Plaintiff asserts that by virtue of its indemnification of the Lindell Trust Company's loss as the result of the default in the said notes FHA 8585–111–3 and 10053–116–5, it was entitled to subrogation with regards to the foregoing amount. The plaintiff also asserts that it is the assignee of the claims for loss by virtue of assignments made by the Lindell Trust Company to it.

It is the position of the defendant that the assignment or transfer of the notes to the plaintiff, a corporation, which said plaintiff concedes does not and did not at the time of the alleged assignment or transfer and at no time during the proceedings herein hold a contract of insurance under Title I of the National Housing Act, constitutes a violation of Section 201.12(d) of the administrative regulations promulgated under said Act (Title 24 CFR 201.12(d)), and, therefore, said purported assignment or transfer is null and void. On the other hand, plaintiff contends that to allow the proposition as asserted by defendant would be contrary to public policy. It should be noted that the plaintiff here is asserting a policy applicable to private insurers and not to the United States; however, it is not necessary to determine this conflict as the purported assignment of the alleged insurance proceeds violates 31 U.S.C. § 203.

The plaintiff contends that 31 U.S.C. § 203 is not applicable to the case at bar, in that the Federal Housing Administration herein is not acting as an agency of the United States, but rather as a pub-lic corporation and that the latter entity falls without the purview of this section. For this contention, it relies on Providence Engineering Corp. v. Downey Shipbuilding Corp., 2 Cir., 3 F.2d 154, Seven Oaks v. Federal Housing Administration, 4 Cir., 171 F.2d 947, FHA Region No. 4 v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 and Garden Homes, Inc. v. Mason, 1 Cir., 249 F.2d 71. These cases do not support plaintiff's contention, as they are not directly in point.

Korman v. Federal Housing Administrator, 72 App.D.C. 245, 113 F.2d 743, is in point on this question. It is desirous to quote at great length from the opinion in this case rendered by the United States Court of Appeals for the District of Columbia. First, 113 F.2d at p. 745, the court said:

"The Federal Housing Administration is an administrative agency * * *. Broadly, its function is the insurance of certain classes of credits extended in connection with improvements and purchase of real estate. Working capital and operating expenses are supplied by the United States. It is obvious that the Federal Housing Administration is an agency of the United States and its claims are therefore entitled to governmental priority in bankruptcy proceedings, unless there has been some affirmative indication by Congress to the contrary."

On page 746 of 113 F.2d the court continued:

"The second class of case wherein the Supreme Court has found evidence of Congressional intent that debts due an agency of the United States are not to be accorded governmental priority involved agencies with a separate corporate personality."

The United States Shipping Board Emergency Float Corporation has been recognized as being an entity separate and different from the United States, and consequently not subject to Section

203. At p. 746 of 113 F.2d the court continued:

"With no suspicion of a corporate identity, as constituted by Congress, the Federal Housing Administration is merely an administrative unit of government. However, the appellant argues that provision for suit by and against the Administrator in his official capacity indicates Congressional intention that the Federal Housing Administration is to be regarded as a separate legal entity whose claims are not to be accorded governmental priority.

"Congress has *expressly* provided by this language *only* that the immunity of the sovereign to suit should not be asserted in respect to the administration of the Federal Housing administration.[15] As a matter of convenience, the Administrator was authorized to appear in his official capacity as the champion of its rights. In this there is no express waiver of other legal prerogatives of the sovereign[16] and it is not always sound to assume that Congress intended to do that which it did not.[17]" (See footnotes 15, 16 and 17 to above quotation.)

■ The conclusion is inescapable that the FHA is the United States, and as such, 31 U.S.C. § 203 is applicable to the case at bar.

The purported assignment of the alleged insurance proceeds violates 31 U.S. C. § 203 in the following particulars, to-wit:

(1) On their face each of said assignments were not "executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof."

(2) The aforesaid assignments do not recite the warrant for payment and were not certified by the notary public who took the acknowledgments; and further in each of said assignments does not appear that the officer "at the time of the acknowledgment, read and fully explained the * * * assignment * * * to the person acknowledging the same * * *."

(3) Plaintiff has never presented its alleged claim or claims for payment as conceded by plaintiff's answers to defendant's interrogatories.

It is apparent for the reasons hereinabove that the aforesaid purported assignments of the alleged insurance proceeds are null and void as violate of 31 U.S.C.A. § 203.

■ The next issues concern whether or not the plaintiff is entitled to assert the right of subrogation against an alternate insurer of Lindell Trust Company. The anti-assignment section previously mentioned has been held not to constitute an absolute bar to recovery by a subrogee and not even to bar recovery in the name of the subrogee. United States v. Aetna Casualty & Surety Company, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171. This case held that an insurance company may bring an action under the Federal Tort Claims Act in its own name against the United States upon a claim to which it has become subrogated by payment to an insured who would have been able to bring such action.

■ By plaintiff's own complaint, it seeks subrogation based on the notes. It is clear that defendant is not a party to such notes. It may be that the plaintiff is entitled to subrogation against all parties to the notes and subsequent negotiators of the notes but that is not the question presented.

Plaintiff cites numerous cases in support of its contention here, but none are applicable to the case at bar because here we are dealing with a governmental entity. Congress has permitted the defendant to "sue and be sued," but suit must be based on the defendant's carrying out the provisions of the National Housing Act or, in other words, in this case, in carrying out its contract of insurance. Not only is the plaintiff not a party to this contract of insurance, but admittedly it does not hold a contract of insurance

under Title I of the National Housing Act. Section 201.12(d) of the administrative regulations, promulgated under said Act pursuant to Title 12 of the U.S.C. § 1703(h) and Section 201.1(d) of 24 CFR, read as follows:

"The insured shall not assign or otherwise transfer any loan reported for insurance to a transferee not holding a Contract of Insurance under Title I of the National Housing Act * * * 24 CFR 201.12(d)."

To permit the plaintiff to be subrogated to the rights that the Lindell Trust Company has against the defendant does violence to the latter's contract of insurance and the National Housing Act. Under the Act as amended, 12 U.S.C. § 1703(a) the defendant is authorized " * * * to insure banks, trust companies * * * which the Commissioner finds to be qualified by experience or facilities and approves as eligible for credit insurance, against losses which they may sustain as a result of loans * * *." The plain objective of the Act was to stimulate the building trades and to increase employment. In order to induce lending institutions to get the program under way, Congress promised that the United States through the Federal Housing Administration would make good up to a certain percentage on losses which they might incur on such loans. As between the Government and the lending institutions it was clearly intended that the former should bear the losses resulting from default. It was not intended that the Government should bear the loss to any other party.

As pointed out before, that plaintiff is in no way a party to the aforesaid contract of insurance or holds a contract of insurance under Title I of the Act, cannot be questioned. Defendant's only duty can be based on the aforesaid Act, and clearly, Congressional intent bespeaks only of insuring the lending institution against default or one holding a contract of insurance under Title I which has acquired rights by virtue of assignment. It insures only to that extent. And since the defendant can only be sued under such provisions we accordingly hold that defendant's motion for dismissal made at the conclusion of plaintiff's case is hereby sustained and costs are assessed against the plaintiff.

This memorandum opinion is adopted by the court as its findings of fact and conclusions of law.