CENTRAL MAINE POWER COMPANY, and Hartford Steam Boiler Inspection & Insurance Company, Plaintiffs,

v.

FOSTER WHEELER CORPORATION, Defendant and Third-Party Plaintiff,

v.

BURNS & ROE, INC., Third-Party Defendant.

Civ. No. 83–0056 P.

United States District Court, D. Maine.

June 26, 1987.

See also 115 F.R.D. 295.

Jotham D. Pierce, Jr., Jeffrey D. Curtis, Pierce, Atwood, Scribner, and Elizabeth T. McCandless, and Scott T. Maker, Portland, Me., co-counsel for Hartford Steam Boiler.

Peter J. DeTroy, III, Norman and Hansen, Portland, Me., James D. Poliquin, for CMP.

F. Timothy McNamara, Hartford, Conn., for Hartford Steam Boiler.

Phillip D. Buckley, Rudman & Winchell, Bangor, Me., for Foster Wheeler.

Elizabeth G. Stouder, Jeffrey A. Thaler, Harrison L. Richardson, Portland, Me., and James A. McCormack, for Burns and Roe.

Norman D. Alvy, Buckley, Treacy, Schaffel, Mackey & Abbate, New York City, Eugene Schaffel, for Foster Wheeler.

GENE CARTER, District Judge.

MEMORANDUM OF DECISION ON DEFENSE MOTIONS FOR INVOLUNTARY DISMISSAL PURSUANT TO Fed.R.Civ.P. 41(b)

## I. *Procedure*

Trial in this matter commenced on June 15, 1987, with the presentation of Plain-

tiffs' case-in-chief. Initially, the Plaintiffs presented a portion of their proof on damage issues in the case. After seven days of trial, it was agreed among counsel, with the Court's consent, that Plaintiffs would present all of their evidence on the liability issues implicit in Counts I and II of the Plaintiffs' Amended Complaint and would be permitted to rest as to liability; the Court to then consider defense motions for involuntary dismissal pursuant to Fed.R. Civ.P. 41(b) attacking the sufficiency of Plaintiffs' case-in-chief to establish a *prima facie* showing of liability of Foster Wheeler on each of Counts I and II. During the eighth day of trial, the Plaintiffs rested under the aforesaid agreement, and Defendant Foster Wheeler Corporation and Third-Party Defendant Burns & Roe, Inc. moved for a directed verdict pursuant to Rule 50 of the Federal Rules of Civil Procedure, which the Court herein treats as a motion for involuntary dismissal made pursuant to Rule 41(b). The Court heard oral arguments on the motions on the eighth day of trial and recessed the trial in order to take the motions under advisement.

The Court entered its order on June 26, 1987 granting the defense motions as to Count II of the Plaintiffs' Complaint and denying them as to Count I thereof. The Court indicated in said order that it would issue in due course a written memorandum of decision on the defense motions, setting out its reasoning for the foregoing actions. This Memorandum of Decision is entered pursuant to the aforesaid order.

## II. *Standard of Factual Review*

■ Although oral arguments on the defense motions were conducted by both the Court and counsel on the assumption that the motions were made pursuant to Rule 50 of the Federal Rules of Civil Procedure, and on the basis of an interpretation of the evidence in the light most favorable to the Plaintiff as required by that rule, it is now clear to the Court that the motions are to be regarded as being made pursuant to Rule 41(b), seeking involuntary dismissal at the conclusion of the Plaintiff's evidence. Fed.R.Civ.P. 41(b). This technical mislabel-

ing of the motion has no effect: the Court is to treat a motion for a directed verdict in a nonjury case as if it were a motion to dismiss pursuant to Rule 41(b). *James v. DuBreuil,* 500 F.2d 155, 156 (5th Cir.1974); *Federal Ins. Co. v. Hardy,* 222 F.Supp. 68 (E.D.Mo.1963).

Rule 41(b) provides in pertinent part as follows:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all of the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

The rule further provides that the granting of such motion, with exceptions not pertinent here, operates as an adjudication upon the merits. The Court, however, has the discretionary authority to reserve judgment until all the evidence is in. *Smith Petroleum Serv., Inc. v. Monsanto Chem. Co.,* 420 F.2d 1103, 1116 (5th Cir.1970).

In finding the facts on a motion under Rule 41(b), the Court is not to make any special inferences in the plaintiff's favor. *Bertolino v. Italian Line,* 414 F.Supp. 279, 284 (S.D.N.Y.1976); *Emerson Elec. Co. v. Farmer,* 427 F.2d 1082 (5th Cir.1970); *contra Ettore v. Philco Television Broadcasting Corp.,* 229 F.2d 481 (3rd Cir.), *cert. denied,* 351 U.S. 926, 76 S.Ct. 783, 100 L.Ed. 1456 (1956). "The rule bestows on courts considerable discretion in their treatment of motions to dismiss in nonjury cases. A court faced with a Rule 41(b) motion to dismiss "is empowered to weigh and evaluate plaintiff's evidence and to grant the dismissal if said evidence preponderates against the plaintiff." *D.P. Ap-*

*parel Corp. v. Roadway Express, Inc.*, 736 F.2d 1, 3 (1st Cir.1984).

Such motions, however, are not favored in this circuit. Dismissal pursuant to the rule should be granted "sparingly." *Id.* The Court of Appeals for the First Circuit has observed:

> Except in unusually clear cases the district judge can and should carry the defendant's Rule 41(b) motion with the case—or simply deny it, since the effect will be the same—let the defendant put on his evidence, and then enter a final judgment at the close of the evidence.

*Id.* (quoting *Riegel Fiber Corp. v. Anderson Gin Co.*, 512 F.2d 784, 793 n. 19 (5th Cir.1975)). The reasons put forth by the Court of Appeals for this sense of judicial restraint in acting upon Rule 41(b) motions is the avoidance of mistrials which may result from a precipitate granting of such a motion and avoidance of the piecemeal appeals which tend to result therefrom. *Id.*

Thus the Court, on the defense motions as they are now properly postured, is required to determine whether judicial economy and the interests of the litigants are best served by a determination of the facts on which Plaintiff's liability case is based on the Plaintiff's evidence alone. In this circuit the test is whether "it is manifestly clear that plaintiff will not prove his case." *D.P. Apparel Corp., id.* If that conclusion is manifestly clear, then the granting of a motion for involuntary dismissal pursuant to Rule 41(b) may be permissible. *Id.*

For reasons set forth hereinafter, the Court determines that the defense motions should be denied.

## III. Merits of the Motions

### A. Count I (Negligence)

 After a detailed and careful review of the testimonial record made and the documentary exhibits admitted during the presentation of the Plaintiffs' liability case, the Court cannot conclude that "it is manifestly clear" that Plaintiffs have not proved their case under Count I based upon negligence in design. *D.P. Apparel Corp., id.*, at 3. This is not a case in which it is "unusually clear" that the Plaintiffs cannot recover on Count I, *Riegel Fiber Corp. v. Anderson Gin Co.*, 512 F.2d at 793 n. 19 (5th Cir.1975), and the Court "decline[s] to render any judgment [on Count I] until the close of all of the evidence," Fed.R.Civ.P. 41(b), on liability.

### B. Count II (Breach of Warranty)

The situation with respect to Count II of the Amended Complaint alleging breach of express and implied warranties is much more complex. Foster Wheeler bases its position on the motion for involuntary dismissal upon the express warranty set out in "Schedule E" of Foster Wheeler's proposal to provide the condenser,[1] specifically, the temporal limitation placed upon the duration of the express warranty. Plaintiffs' Exhibit 2—"Schedule E." Its argument, in short form, is that "Schedule E" provided express warranties as to (1) "Material and Workmanship" and (2) "Performance" and that they are the *only* warranties made by Foster Wheeler *because of* the "Disclaimer" of any other express *or implied* warranties contained in "Schedule E." Therefore, Foster Wheeler asserts that Plaintiffs cannot recover for breach of implied warranties of fitness for ordinary

---

**1.** In its Memorandum on the motion and in oral argument, Foster Wheeler's counsel asserted that the "Material and Workmanship" warranty rather than the "Performance" warranty governed the Count II claim so as to impose the temporal limitation in question. As the Court pointed out at the argument, the former would not appear to be applicable as Plaintiffs make only a claim for defect in design of the condenser and have conceded that the failure of the condenser did not occur because of defects in materials or workmanship in fabricating or erecting the condenser. Counsel appeared to agree that, in the context of Plaintiffs' claims in Count II, the "Performance" warranty was the applicable portion of Foster Wheeler's express warranty.

In any event, the temporal limitation appears to be the same in the case of either warranty (*e.g.*, 3/1/78) because Plaintiffs' Exhibit 3, at ¶ 9(a), appears to modify the differing temporal limitations in both warranties as they appear in the original "Schedule E" with the result that they both expire on "3/1/78."

purpose and/or fitness for a particular purpose, as alleged in Count II, because no such warranty was made by Foster Wheeler; nor may Plaintiffs recover under the express "Performance" warranty that was given by Foster Wheeler because it had expired before the date of the damage-producing incident, January 15–16, 1979.

■ The linchpin of this argument is that the "Disclaimer" of warranties is effective. If it is not effective, then implied warranties as alleged in Count II may, indeed, exist. The Court is not satisfied on the present state of the record that it is "manifestly clear" that the "Disclaimer" of warranties is effective. This is principally so because it is not clear on the evidentiary matrix laid by the Plaintiffs' case whether the issue of the effectiveness of the "Disclaimer" is governed by the provisions of the Maine Uniform Commercial Code or by the general law, a determination that may be influenced by findings of fact on which the evidence may not yet be complete; and since the "Disclaimer" is a matter of affirmative defense, Foster Wheeler bears the burden of proof with respect to its effectiveness. There is also some doubt in the Court's mind, in the present state of the record, as to whether the substantive law of Maine or some other state is to be applied to resolve the issue under *Klaxon Company v. Stentor Manufacturing Company*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). *See Katz v. Gordon Johnson Co.*, 160 F.Supp. 126 (D.Me.1958); and *Lincoln Pulp & Paper Co., Inc. v. Dravo Corp.*, 436 F.Supp. 262, 268 (D.Me.1977).

As to the additional grounds for the granting of the defense motions as to Count II, put forth by counsel for Burns & Roe and joined in by Foster Wheeler, those require determination of (1) the existence of comparative fault on the part of Central Maine Power Company in the operation of the condenser on January 15–16, 1979; (2) whether Foster Wheeler breached any warranty in designing the condenser (an issue the Court has already declined to decide on the defense motions); (3) whether Plain-

tiff's fault, if any exists, is equal to the causal fault of Foster Wheeler in breaching a warranty, if it did do so, and if fault arising out of a breach of warranty is within the definition of "comparative fault" under 14 M.R.S.A. § 156; and (4) the causal connection between any fault of Foster Wheeler and all or any part of the damages claimed by the Plaintiffs.

After having exhaustively reviewed all of the evidence, testimonial and documentary, admitted during the Plaintiffs' case, the Court cannot say that it is presently "manifestly clear," *D.P. Apparel Corp.*, 736 F.2d at 3, that Plaintiffs will not recover for breach of warranty as alleged in Count II of the Amended Complaint.